JOHN M. DENNIS, Respondent, *v.* CHARLES RYAN, Appellant.

Where one makes a false and malicious charge against another, and by means thereof procures the indictment and arrest of the latter, it is no defence to an action for malicious prosecution that the false accusation did not allege facts constituting the crime charged in the indictment or any other criminal offence. (LOTT, Ch. C., and DWIGHT, C., dissenting.)

Defendant went to a district attorney and falsely and maliciously charged the plaintiff with erasing an indorsement of payment upon a money bond held by him; this the district attorney decided to constitute the crime of forgery, and thereupon he caused defendant to be subpœnaed before the grand jury. He appeared and was examined. Plaintiff was indicted for forgery, arrested and tried. The court directed a verdict of not guilty, upon the ground that the facts alleged did not constitute the crime charged. In an action for malicious prosecution, *held* (LOTT, Ch. C., and DWIGHT, C., dissenting), that defendant was the procuring cause of the indictment and arrest of plaintiff, and that defendant was liable, although the charge made did not constitute the crime.

*It seems*, that if the statements made by defendant had been true the action could not have been maintained.

*Leigh* v. *Webb* (3 Esp., 165); *McNeely* v. *Driskill* (2 Blackf., 259); *Bennett* v. *Black* (4 Ala. [1 Stew.], 494) distinguished.

(Submitted September 28, 1874; decided May term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 5 Lans., 350; 63 Barb., 145.)

This action was for malicious prosecution in falsely and maliciously charging and causing the plaintiff to be indicted, arrested and tried for the crime of forgery.

Defendant went to the district attorney of Cayuga county and charged plaintiff and one William Dennis with erasing an

indorsement of a payment made upon a bond conditioned for the payment of money; the district attorney gave it as his opinion that this erasure constituted the crime of forgery. The district attorney caused defendant to be subpœnaed before the grand jury. He appeared and testified, and plaintiff was indicted. It was set forth in the indictment, in substance, that plaintiff and William Dennis knowingly, designedly and feloniously altered the bond by erasing therefrom the indorsement with intent to defraud and cheat the obligor and defendant, who had assumed and agreed to pay said bond. Plaintiff was arrested and tried upon the indictment. Defendant was sworn upon the trial. The court directed a verdict of not guilty upon the ground that the erasure of the indorsement would not constitute the crime of forgery; a verdict was rendered accordingly. Upon the trial of this action the court charged, in substance, that the action could not be maintained unless they were satisfied that the accusation made by defendant, on which the indictment was found, was known by him to be false and unfounded; but that if defendant made this complaint to the district attorney, knowing that it was false and unfounded, and by that means procured plaintiff to be indicted and brought to trial, the action would lie, even though the charge made did not constitute the crime alleged, or any crime. Further facts are set forth in the opinions.

*H. V. Howland* for the appellant. No crime was imputed or charged by the facts or circumstances, or given before the grand jury. (*State* v. *Thornburg*, 6 Ired., 79; *State* v. *McLaren*, 1 Aikin, 311; *State* v. *Norton*, 3 Zab., 33.) Defendant cannot be made liable for a malicious prosecution. (*McNeely* v. *Driskill*, 2 Blackf., 259; *Leigh* v. *Webb*, 3 Esp., 165; *Blunt* v. *Little*, 3 Mass., 102; *Murray* v. *McLane*, 2 Car. L. R., 186 [3 Abb. Nat. Dig., 244].) The court erred in denying the motion for a nonsuit. (*Foshay* v. *Ferguson*, 2 Den., 617, 619; 3 Wash. C. C. R., 37; *Miller* v. *Milligan*, 48 Barb., 40; *Besson* v. *Southard*, 6 Seld., 236; *Hall* v. *Suydam*, 6 Barb., 86; *Vanderbilt* v. *Mathis*, 5 Duer, 304;

*Baldwin* v. *Weed*, 17 Wend., 224; *Scott* v. *Simpson*, 1 Sand., 601; 3 Esp., 7; 9 East, 261; 6 N. Y., 240.)

*F. D. Wright* for the respondent.   It was immaterial whether plaintiff could have been punished under the indictment.   (1 Arch. Cr. Pr. and Pldgs. [7th ed.], 1410; *Collins* v. *Love*, 7 Blackf. [Ind.], 416.)   Defendant was liable for malicious prosecution.   (1 Arch. Cr. Pr. and Pldgs. [7th ed.], 470; 1 Hil. on Torts, 470; *Forrest* v. *Collier*, 20 Ala., 170; *Collins* v. *Love*, 7 Blackf., 416; *Wicks* v. *Fentham*, 4 T. R., 247; *Hays* v. *Younglove*, 7 B. Mon., 545; *Gaslin* v. *Wilcock*, 2 Wils., 302; *Chambers* v. *Robinson*, 2 Stra., 691; *Padro* v. *Barrett*, 1 Ld. Raym., 81; *Morris* v. *Scott*, 21 Wend., 281; 1 Am. Cr. Cas., 208, 209.)

GRAY, C.   In all that pertained to the criminal prosecution of the plaintiff, the defendant was as much the complainant and prosecutor as if he had, unbidden by legal process, appeared before the grand jury and made the complaint upon which the indictment was found.   He knew the district attorney to be a law officer of the county, whose duty it was to prosecute for such criminal offences as had been committed within its limits; he appeared before him and related his made-up and malicious story which, if true, constituted, in the opinion of that officer, a criminal offence.   The result was that the district attorney, confiding in the truth of his statement, and, as in duty bound, caused him to be subpœnaed to appear before the grand jury and testify as to the matter of which he had complained; he appeared, testified, and the indictment followed.   That he was the complainant was not questioned on the trial, nor is it raised by the appellant here.   The crime charged was forgery; it was alleged and stated in the indictment to consist of an erasure of an indorsement of payment upon a bond.   This, it is insisted on the part of the defendant, did not constitute the crime of forgery, and I am inclined to think it did not; and because, as the defendant insists, it did not, he claims that however false his accusation

was, or with whatever evil or malicious intent he instigated the prosecution, and however much it may have vexed and injured the plaintiff, he is not liable in this action, and the reason assigned, in substance, is, that it was through the misjudgment of the district attorney and the grand jury that the indictment was found, a warrant issued, the plaintiff arrested and put upon his defence. I do not doubt that if the defendant's statement to the district attorney and the grand jury had been true, and that an indictment had been found and prosecuted upon his truthful statement, that this action could not have been maintained; in such case, the defendant would not have been guilty of any wrong. The oppression of the plaintiff would have been attributable alone to the erroneous legal conclusions of the district attorney and grand jury. Such, in effect, was the case of *Leigh* v. *Webb* (3 Espin., 165), *McNeely* v. *Driskill* (2 Blackf., 259) and *Bennett* v. *Black* (4 Ala. [1 Stew.], 494) and other cases which might be cited, and in not one of all of them which have fallen under my observation does it appear that the complaint was not honest and truthful, and that the injury was the result alone of a judicial error. Subsequent to the cases of *McNeely* v. *Driskill* and of *Bennett* v. *Black*, a case arose in the courts of the respective States of Indiana and Alabama which, in principle, uphold this action. In the former, a count for malicious prosecution was held good, although the charge upon which the prosecution was made did not authorize issuing the warrant. (*Collins* v. *Love*, 7 Blackf., 416). In the latter, it was held that in an action for maliciously suing out an attachment, the defendant could not raise the objection that the affidavit made was insufficient to authorize issuing it. (*Forrest* v. *Collier*, 20 Ala., 175). And in *Anderson* v. *Buchanan* (Wright's Ohio R., 725), it was held that although the charge made did not constitute a crime, yet, as it was false and malicious, it did not lay with the defendant to raise that objection. (*Farlie* v. *Danks*, 30 Eng. Law & Eq. R., 115.) Lord CAMPBELL, Ch. J., in delivering the opinion of the court in a case not distinguishable in principle from the one under con-

sideration, said : " I think all that is necessary is that the defendant should falsely and maliciously cause the act to be done ; and he did cause it, because, if he had not presented his petition and made a false affidavit, the judge could not and would not have made the adjudication. I should have been surprised and grieved to find any decision of our courts that the action was not maintainable. There is no doubt that if a person truly states to a judge, and the judge thereupon does an act which the law will not justify, the party who made the statement is not liable, because, in that case, the grievance complained of arises not from the false statement of the party but from a mistake of the judge. It would be strange if, where a court is put in motion by a false and malicious statement, it should depend upon a nice question of law whether there was a remedy or not." A case has arisen in our own courts in which a party falsely and maliciously prosecuted another for a crime, before a court having no jurisdiction of the offence, and he was held liable in an action for malicious prosecution, upon the ground that falsehood and malice united was the *gravamen* of the action ; that " the sting of all this kind of actions is malice and falsehood and the injury resulting therefrom." (*Morris* v. *Scott*, 21 Wend., 281). That the plaintiff was, upon the complaint of the defendant, prosecuted, is not denied ; that the complaint was false and maliciously made is established by the verdict of the jury, and now that he has put in motion the officers of the law, and by his false and malicious statement it does not, either upon principle or authority, lay with him to say by way of defence that the injury resulting from the wrong committed by him would not have been consummated but for the innocent mistake of those imposed upon by him.

The judgment appealed from should be affirmed.

LOTT, Ch. C. (dissenting). This is an action for malicious prosecution, and the question presented for our decision on the present appeal is, whether a witness, on whose testimony,

stating facts that did not constitute a criminal offence, an indictment for forgery has been found against a party at a Court of Oyer and Terminer in this State, and where the jury on its trial, by direction of the court, rendered a verdict of not guilty, on the ground that the facts alleged and charged did not impute that crime, is liable in such an action to the party indicted, and discharged for the reason so assigned.

The case, as presented by the evidence, is substantially this. The plaintiff was indicted by a grand jury of Cayuga county, in this State, at a Court of Oyer and Terminer held therein, by an indictment alleging that he and William Dennis had forged a bond, made and executed by one William Sanders to Jonathan Ryan, for the payment of $625, with annual interest from its date — on the back of which, "was indorsed forty-five dollars in part payment thereof," payable one year after its date, and the forgery was stated to be in altering the bond — by "falsely and feloniously separating the aforesaid indorsement from the said bond or writing obligatory, and by falsely and feloniously erasing and removing the aforesaid indorsement from the back of the aforesaid bond or writing obligatory, with intent to defraud and deceive the said William Sanders, and with intent to cheat and defraud one Charles Ryan, who had assumed and agreed to pay and discharge the said bond, to the great damage of the said William Sanders and the said Charles Ryan." The said Charles Ryan is the defendant in this action. The district attorney of the county, who had charge of the prosecution, testified, among other things, as follows: "In the first place, Charles Ryan came to me and made a statement of the case; I told him in my judgment it was a forgery; I talked with him about it; I am unable to say what I said or what he said; I issued the subpœnas and the witnesses came before the grand jury, and they found the bill; I drew it and it was presented to the court and filed on the 7th day of October, 1869. The indictment came on for trial at the November sessions." He also said that Ryan was sworn before the grand jury and on the trial of the indictment, and

he mentioned and stated the testimony of Ryan given on the trial, tending to show that the indorsement had been made and the parties indicted had erased it, with the intent of defrauding him. He further testified that Ryan, when he first came to him, stated the case and the evidence substantially as it was testified to on the trial; that he thereupon advised him that there was an offence committed; that in his judgment the parties were guilty, and that Ryan and other witnesses afterwards, on being subpœnaed for that purpose, went before the grand jury, and they found the indictment as above mentioned. He also made the following statement: "Charles Ryan knew nothing about the arraigning of the prisoners; I did it in my usual course as district attorney; I don't know as I made any difference between that case and others; from the time Ryan stated the case to me, up to the close of the matter, I proceeded in the ordinary manner; there was no difference in this case and other cases of the kind; I felt interested in the case and took more pains in it than in some."

He also stated that the allegation in the indictment of the amount indorsed was forty-five dollars, and the evidence was forty-three dollars and seventy-five cents; that the trial of the cause was not upon its merits, but that it went off on the motion of the prisoner's attorney therefor, on the ground of such variance, and also on the ground that an erasure of the indorsement was no alteration of the bond, and not an offence. That "the principal ground was, that it was no offence to rub it out, if it had been erased; that the rubbing of it out was not an alteration of the bond as charged in the indictment;" and upon that, the court directed the jury to find a verdict of not guilty, which was accordingly found, and thereupon the prisoners were discharged. It must be assumed that the testimony given before the grand jury was substantially the same as that on the trial.

The result of this evidence, so far as it relates to the acts of the defendant, is, that he stated certain specific facts relative to the indorsement and its erasure to the district attorney

and before the grand jury; that upon a mistake of the law applicable to those facts, as held by the court on the trial, the indictment was found charging the parties indicted with the crime of forgery, when, in truth, the act which was the basis of the indictment did not constitute such offence, and that he did nothing further, in relation thereto, afterwards, than giving his testimony on the trial. The learned judge, on the trial of the issues in the present action, instructed the jury, among other things, in reference to the allegation of the erasure of the indorsement as follows: " The court is of opinion that it did not impute a crime, and that the offence of forgery was not imputed by the facts as they appear, but, for the purposes of this prosecution, it is precisely the same as though the offence charged in the indictment was a crime, and you are so to consider it, * * * and the action is sustainable in our view, precisely the same as though there was a crime alleged." And he refused to charge the following propositions, or any or either of them: First. That if the erasure or obliteration of the indorsement from the bond did not constitute a crime, then no action would lie. Second. That the grand jury, having found an indictment for that which was not a criminal offence, and the plaintiff having been arrested upon that indictment, the defendant is not liable in this action. Third. That even if the defendant made false statements of facts to the district attorney, or even to the grand jury, in regard to the proofs or evidence by which the allegations or charge of the obliteration or erasure of the indorsements on the bond could be proved, that even then, as long as no crime was committed or charged, such statements were entirely immaterial, and did not amount to false statements or charges of crime, and therefore the defendant is not liable." The theory or ground on which the portion of the charge above referred to was made, and the refusals to charge as so requested were founded, was substantially embraced in the following statements to the jury: " That a party who instigates a prosecution of this kind cannot screen himself behind the allegation or claim that the offence committed was not a crime, * * * that for the

purpose of this action it must be deemed a crime, because the defendant instigated it, being advised that it was a crime, and the plaintiff here was brought to trial upon an indictment, and, so far as he was concerned, he is injured to the same extent as though the allegations contained in the indictment amounted to crime in fact."

That if the defendant " knew that the accusation he made was unfounded, and that the statement of facts upon which the indictment was found were untrue, * * * then he procured the plaintiff to be indicted, and subjected him to the trouble and jeopardy of a trial in court for a crime by means of false statements, and must be held responsible."

It will be seen, from the preceding extracts, that the learned judge treated the defendant as the party who *instigated* and *procured* the indictment, entirely overlooking and ignoring the material fact that he only made certain statements to the district attorney and grand jury for their consideration and judgment, and, in effect, did nothing more than to leave it for their decision whether the facts stated constituted a criminal offence; and there is no ground for saying that he, assuming him to be the original complainant, asked for an indictment for forgery, or any offence whatever, unless those facts justified it. His complaint was the means or cause of the investigation into the truth of the matters to which it related by the proper officer and tribunal, and the grand jury, with the aid and advice of the district attorney, their legal adviser, as to the legal effect, found the indictment under which the plaintiff was afterwards tried and acquitted. The wrong done to the plaintiff was the result of a mistake by the appropriate tribunal as to the legal effect of the charge made by the defendant, resulting in the indictment and the proceedings thereon, which were not warranted or authorized by any matter communicated or testified to by the defendant, and he was not responsible for the mistake in law made by others in determining whether or not the act complained of was an indictable offence, and he, therefore, cannot properly be said to have *instigated* or *procured* the particular indict-

ment in question. He cannot, in view of what was said and done by him in relation to it, be considered as standing in any other relation than that of a witness. He was in no sense the party who obtained or prosecuted the indictment. Under the principle of the ruling at the Circuit, if a grand jury, on evidence given by a prosecuting witness of adultery by a party, indict him for bigamy, or if they, on a complaint of assault and battery only, indict an individual accused thereof with the crime of murder, the person making a legal and proper complaint can be held liable for the illegal action of the grand jury.

The learned justice, giving the opinion at General Term, in disposing of this question, said: " The rule is, that where a party, knowing that a certain act does not constitute a crime, procures another to be indicted for a crime, or where he *supposes* or *believes* such act, if done by another, would constitute a crime and falsely and maliciously accuse such other of the commission of the act and procures him to be indicted, the action for a malicious prosecution lies," and he refers to 1 American Leading Cases (218), where he says, " nearly all the authorities, English and American, are collected."

The first part of that rule, so laid down and assumed to be the law, has no application to the present case. It is based on the assumption that the complainant *knew*, at the time of making his complaint against a party, that the facts alleged did not constitute a criminal offence, and that he nevertheless *procured* an indictment against him for a crime. Here, as I have already shown, the defendant did not have such knowledge, nor did he *procure* the plaintiff to be indicted.

The latter part of the rule, or proposition, is not sustained by the authorities to which reference is made to sustain it. They are to be found in a note, by Hare and Wallace, to the case of *Munns* v. *Duport* (1 Am. Lead. Cas., 208). It is there said, that it is certainly only in case of a crime, or at least an indictable offence, involving moral turpitude, the verbal imputation of which would be slander, that the mere preferring of an indictment or issuing a warrant or other institution of a

criminal proceeding, without arrest or special damages, is indictable. Then there is in the same note the following statement : "If a person state facts to a magistrate truly, which do not amount to a felony, or constitute a different felony, and the magistrate, of his own motion, erroneously issue a warrant for felony or for another felony from that stated, the person is not liable for malicious prosecution." In support of that the following, among other authorities, are cited, viz. : *Leigh* v. *Webb* (3 Esp., 165), *McNeely* v. *Driskill* (2 Blackf., 259) and *Bennett* v. *Black* (1 Stew. [Ala.], 495).

In *Leigh* v. *Webb* (3 Esp., 165), the action was for a malicious prosecution. The declaration contained four counts, substantially charging that the defendant had, without probable cause, procured him to be imprisoned under a warrant obtained on a charge of felony. It appeared, however, that the information to the magistrate contained a statement of facts, showing a loss of certain casks belonging to the defendant, but not constituting a felony, and containing no direct charge of the offence in terms against the plaintiff. The warrant issued on that information, and on which the plaintiff had been arrested and committed for further examination, recited or stated that the charge against him was "on suspicion of having feloniously taken and having in his possession casks, the property of the defendant." Lord ELDON nonsuited the plaintiff, saying : "There is no charge of felony contained in the information. It contains a state of facts certainly not amounting to a felony, but for which an action of trover could be maintained. The defendant having lost his property, states the facts to a magistrate, upon which he is to form his judgment. If the highest criminal judge of the land was, by a mistake of judgment, to conceive that to be a felony which did not amount to that offence, and to commit the party complained against, would that subject the party complaining to an action of this sort? I am of opinion it ought not, and that the plaintiff must be nonsuited."

In *McNeely* v. *Driskill* (2 Blackf., 259), it appeared that Driskill had been arrested on a warrant issued by a justice of the peace on an affidavit of McNeely, which did not authorize

the justice to issue it, and from which Driskill was afterwards discharged by another justice of the peace. Thereupon Driskill brought an action against McNeely for wrongfully and maliciously prosecuting him on a charge of larceny, and obtained judgment, from which an appeal was taken by McNeely. On the decision of the appeal, SCOTT, J., said: "That the affidavit on which the warrant was issued showed a state of facts on which an action of trover might have been obtained, but it contained no charge of larceny against any person." He then says: "The appellant had lost his property and wished to recover it. He states that fact to a justice of the peace. The justice forms his judgment upon the facts stated; he issues his mandate to an officer to search for the property and to bring the person in whose possession it may be found before himself or some other justice of the peace, etc. This was an error, but it is the error of the justice, but not of the appellant; and if a justice of the peace, by mistake of judgment, conceives an act to be felony which is not felony, and in consequence of that mistake causes an innocent person to be arrested and imprisoned, the law will not hold the person who made the complaint responsible in this form of action for the consequences of such errors." (Citing 3 Esp., 165, *supra.*)

In *Bennett* v. *Black* (1 Stew. [Ala. R.], 494), the declaration averred that the prosecution, for which Bennet was sued as having been malicious, was for a robbery. It appears the proceedings were instituted on his information of certain acts by Black, constituting a trespass, in reference to which he made an affidavit before a justice of the peace, whereupon the justice issued a warrant charging robbery against Black, under which he was arrested. A recovery was had by the plaintiff, and the Supreme Court, in the opinion delivered by Judge PERRY, for the reversal of the judgment, said: "The court are of opinion that if a justice of the peace or any other judicial officer, to whom application may be made for a warrant for the apprehension of offenders against the criminal law of the land was, by mistake of judgment, to conceive that to be felony which, from the facts sworn to, did not amount

to that offence, and should the party complained against be committed to jail, it would not subject the party complaining to an action of this sort. If it could, it would subject every prosecutor to an action for the acts of the criminal judge, which is too unreasonable to be admitted."

It was said in that opinion that it had been contended in argument, and it was admitted by the court, that a person might subject himself to this form of action for carrying on a prosecution in a court having no jurisdiction of the offence, and where an indictment was *defective.* But it was added that in both of the cases put it would be found that a particular crime was charged, authorized by the facts sworn to by the prosecutor, and, although the indictment was defective in one case and the court had no jurisdiction in the other, a prosecution was carried on, authorized by the facts charged by the prosecutor; and the court said, further, that the cases which had been cited in support of the claim or proposition that an action could be maintained for a malicious prosecution, when the warrant charged a different offence from that alleged in the information upon oath on which it was issued, were all cases in which "the information given charged a particular crime and that the subsequent proceedings were in accordance with the information upon which they were had."

It is also said by the learned justice who delivered the opinion of the General Term, that "in our own court it has been held that this action would lie against a party who has falsely and maliciously prosecuted another, although the court in which the action was brought was utterly destitute of jurisdiction in the matter, and the case of *Morris* v. *Scott* (21 Wend., 281) is cited to support the statement.

It will be seen that it is there assumed that the defendant was the party who *prosecuted* the plaintiff, and, upon that assumption, the action was held to be maintainable, and the material and controlling fact in the case at bar, that the defendant herein was not the party who could under the facts be considered as the *prosecutor*, is entirely ignored or overlooked.

It appears by a reference to the statement of that case, as
reported, that the plaintiff Morris brought an action on the
case against the defendant Scott for malicious prosecution,
having been arrested on a warrant issued by a magistrate on
the complaint of Scott, maliciously made and without proba-
ble cause, charging Morris with aiding and assisting in the
removal of the property of a third person for the purpose of
*defrauding* the creditors of such person, for which he was
brought before the magistrate and subsequently tried by a
Court of Special Sessions, by which court he was acquitted
and discharged. The defendant Scott pleaded not guilty, and
upon proof being offered, on the trial of the issue, of the facts
above stated, the defendant Scott objected to any proof being
received for the want of the averments in the declaration that
either the justice to whom the complaint was made, or the
Court of Special Sessions, before whom the plaintiff was tried,
had *jurisdiction* in the matter. The objection was sustained
by the Court of Common Pleas, in which the action was
brought, and the plaintiff was nonsuited. · He sued out a writ
of error from the Supreme Court, by whom the judgment of
nonsuit was reversed. COWEN, J., giving the opinion of the
court, said that a party who pursues a man by arrest in a
court destitute of jurisdiction may be sued in *trespass* for
false imprisonment, but that the authorities taken together
gave a decided countenance to *an action on the case*, though
there might be a total want of jurisdiction, provided the
*malice* and *falsehood* in causing the arrest be put forward as
the *gravamen*, and the arrest or other act of trespass be
claimed as the consequence. He then closed the opinion with
the following remarks, viz.: " This case, therefore, as it stood
at the common law, seems properly set down by Mr. Chitty as
presenting a right to elect between case and trespass. (1 Chit.
Pl., 127 [Phila. ed. of 1828].) But be that as it may, a clear
right of election arises under the statute. (2 R. S., 456 [2d
ed.], § 16.) By that section *case* may now be brought for
almost any trespass affecting the person or personal property.
Conceding, therefore, that the declaration failed to show juris-

diction, the evidence offered should have been received." It will be seen by this reference to the facts and circumstances of that case and the opinion of the learned judge that it was not claimed, or in any manner suggested, that the facts stated by Scott to the magistrate did not constitute a criminal offence, for which Morris could have been properly and legally arrested on a warrant issued on his complaint by the magistrate, if he had had jurisdiction; but it was substantially conceded by the declaration that the charge made, if true, was a crime, and the *gravamen* of the action was that the defendant had failed to substantiate *the criminal offence charged*, and that his complaint made was malicious and without probable cause, and the point decided was that an action *on the case would*, on such facts, lie against the complainant, although the magistrate had no jurisdiction of the offence. The case at bar was radically different from that: 1. Because the Court of Oyer and Terminer, in which the indictment against the plaintiff was found, was a court of general criminal jurisdiction, and could, therefore, lawfully indict him if the facts stated in the testimony given before that body by the defendant constituted a criminal offence ; and, 2. Because it appears that the facts so stated did not impute or charge such an offence; and, therefore, whether the evidence so given was true or not, or whether it was dictated by malice and without any probable cause or not, the action of the grand jury in finding an indictment thereon in the exercise of unquestioned jurisdiction over every criminal offence was the result of their erroneous construction of its effect, over which he had no control, and for which error he is not responsible.

There is a class of cases holding that an action for malicious prosecution will lie against a party who, on a statement of facts before a justice of the peace or a court having no jurisdiction of the subject-matter, erroneously issues unauthorized process purporting to be founded or based on the facts so stated, but those decisions are placed on the ground that the whole proceedings were *coram non judice*, and that all of the participants therein were wrong-doers.

There is also another class of cases in which parties have been held liable in such an action where the facts stated by him on a complaint before a grand jury, were such as to constitute a criminal offence, but were so defectively alleged in the indictment found thereon, as to prevent a conviction for that reason. Such are the cases of *Chambers* v. *Robinson* (1 Strange, 691); *Wicks* v. *Fentham* (4 T. R., 247); *Pippet* v. *Hearn* (5 B. & Ald., 634), and others cited or referred to therein. There are also some cases, holding that if a complainant goes before a magistrate asking a criminal warrant, or before a grand jury for the purpose of procuring an indictment against another on a representation of facts, which do not amount to a crime, he is nevertheless responsible for the loss and damage resulting from such complaint, on the ground that he is considered as the party *instigating* or *procuring* the warrant or indictment. Among those is that of *Anderson* v. *Buchanan*, in Wright's Nisi Prius (Ohio), 725.

All of those cases are essentially different from that under consideration, in this material fact, that the defendant herein presented the facts, before they were testified to by him before the grand jury, to the district attorney of the proper county, for his determination and decision whether they constituted a criminal offence. He was advised by that officer that they did, and upon that advice being given, the matter was thereafter taken charge of by the district attorney, and the defendant subsequently went before the grand jury as a witness, on being subpœnaed by that officer, and thereupon gave his testimony as such witness, which, with other evidence given, resulted in the finding of the indictment. That finding was not the legitimate or proper result or consequence from the defendant's statement, but from a mistake of the district attorney and the grand jury, in deciding that the facts stated constituted a crime, and indictable offence. Hence the material element of being the *prosecutor* of the indictment, to charge the defendant with liability for the consequences of that indictment to the plaintiff, was wanting. It therefore became immaterial whether the testimony was true or false, for in either case the facts

thereby established, not constituting a criminal offence, could not make him properly chargeable for the mistake and erroneous judgment of the grand jury, who acted independent of any control by him and of any request or solicitation from him to have the defendant indicted, or for the subsequent arrest under it, on a warrant issued by the district attorney, or by the mandate of the court over which he had no control, and in which he did not in any manner participate; nor, in view of the fact that the defendant was not the *prosecutor* of the plaintiff for the offence charged, is it of any importance whether his conduct was dictated by malice or not?

I will add that the opinion given by ANDREWS, J., in the case of *Farnam* v. *Feeley* (56 N. Y., 451), recognizes the distinction between the case of a party instigating a criminal prosecution by active agency and procurement, and one where he did not counsel, cause, or direct it.

My conclusion, therefore, is that the judgment appealed from is erroneous and should be reversed, and that a new trial should be ordered, costs to abide the event.

DWIGHT, C. (dissenting). This is an action brought for the malicious prosecution of the plaintiff by the defendant. The plaintiff was indicted in Cayuga county for the crime of forgery.

The alleged forgery consisted in an asserted erasure of an indorsement of part payment made upon a bond conditioned for the payment of a sum of money. It was set forth in the indictment that Dennis, now plaintiff and then defendant, altered the bond by falsely and feloniously removing the indorsement, with intent to defraud the obligor, as well as Ryan, the present defendant, who had assumed the payment of the bond.

At the trial of this indictment it was argued, in behalf of Dennis, that there was on the face of the indictment no offence charged. The erasure of the indorsement would not constitute forgery of the bond. The judge directed the jury to find the defendant Dennis not guilty, and he was discharged.

On the trial of the present action, it was proved by the testimony of the district attorney that Ryan came to him and made a statement of the case, whereupon he expressed the opinion that it was a forgery. The district attorney issued subpœnas for witnesses, who thereupon came before the grand jury, and an indictment was found. It is assumed that Ryan falsely and maliciously made his statement to the prosecuting officer, and persisted in it on the trial.

The defendant requested the judge to charge the jury that if the erasure or obliteration of the indorsement did not constitute a crime, the present action must fail. There was a further request to the effect that as the grand jury had found an indictment for that which was not a criminal offence, and the plaintiff having been arrested on that indictment, the defendant is not liable in this action. The judge refused to charge these propositions. On the other hand, he charged affirmatively that if Ryan went to the district attorney and made this complaint, knowing that it was false and unfounded, he was liable, even though no crime was charged, nor any criminal offence imputed by the facts stated. Due exception was taken to the charge and refusals to charge.

These rulings present the question whether an action for malicious prosecution will lie, where the defendant states facts to a district attorney which in themselves constitute no crime, and that officer upon such a statement causes an indictment to be found and prosecuted.

The real inquiry in such a case is, what is the true cause of injury to the plaintiff? Is it the false statement of facts, or the carelessness or unskillfulness of the prosecuting officer? Assume that the present defendant had falsely stated facts which, if true, were the basis of a civil action, would he have been liable upon that statement for the results of an indictment? A man might be falsely charged with a breach of promise of marriage, accompanied with seduction. If the woman and other witnesses had falsely stated to the district attorney facts showing the promise to marry, its breach and indecent familiarities not amounting to seduction, and on this

statement an indictment had been found, could the woman be said to have maliciously prosecuted a criminal charge, upon facts showing that at most only a civil action for damages would lie? I think not.

The principle governing this case appears to be settled by *Leigh* v. *Webb* (3 Esp. N. P., 165), before Lord ELDON, then chief justice of the Common Pleas. This was an action for malicious prosecution based upon the following state of facts: The plaintiff was a publican, and dealt with the defendant as his brewer, and certain casks containing ale had been sent into the plaintiff's house. When they became empty they were sent to the house of a third person. The defendant, on this state of facts, procured a warrant from magistrates under which the plaintiff was taken into custody. The plaintiff, on this showing was nonsuited. Lord ELDON said: "The plaintiff in every count of his declaration except the first, complains that the defendant imposed the charge of felony upon him, and that count varies from the information on which the magistrate issued his warrant. Does the evidence correspond with the case the plaintiff has put upon the record? There is no charge of felony contained in the information; it contains a state of facts certainly not amounting to felony, but for which an action of trover could be maintained. The defendant having lost his property, states the facts to the magistrate, upon which he is to form his judgment. If the highest criminal judge of the land was by mistake of judgment to conceive that to be a felony which did not amount to that offence, and to commit the party complained against, would that subject the party complaining to an action of this sort? I am of opinion that it ought not, and that the plaintiff must be nonsuited."

It is true that this is a *nisi prius* case, but it was decided by a distinguished judge, and seems beyond question to be correctly decided. It differs from the case at bar in the fact that there was no false statement of facts. That, however, is immaterial under the reasoning of the court. The point of the decision is, that the true cause of the imprisonment is

the error of the magistrate, and this is the same whether the facts are real or simulated. It seems to me that the correct rule is, that to make the person who presents the charge liable, the facts, *as he states them*, must be sufficient to constitute a crime. If that were the case, it may plausibly be maintained that he has set in motion the proceeding, even though the prosecuting officer drew the indictment imperfectly or managed the prosecution so languidly or inefficiently that no conviction could be secured.

It has been held in some of the earlier cases, that an action for malicious prosecution may be maintained, though the warrant or indictment were legally defective, and the plaintiff never could have been convicted, " for the disgrace, injury, trouble and expense are the same under a bad indictment as under a good one." (*Jones* v. *Gwynn*, 10 Mod., 214; *Chambers* v. *Robinson*, 1 Strange, 691; *Miles* v. *Fentham*, 4 T. R., 247; *Pippet* v. *Hearn*, 5 Barn. & Ald., 634.) None of these cases affect the disposition of the case at bar. They proceed upon the supposition that the defendant stated facts to the grand jury amounting to a crime, but the indictment was defectively drawn. Thus, in *Pippet* v. *Hearn*, the court said : " We are of opinion that where a man maliciously prefers an indictment *against another for a crime*, he is liable to an action, although the indictment be defective." On the other hand, the principle in *Leigh* v. *Webb* is approved in Addison on Torts, and followed in 1 American Leading Cases, 208, 209. It is there said, if a person state facts to a magistrate truly, which do not amount to a felony, or constitute a different felony, and the magistrate, of his own motion, erroneously issue a warrant for felony, or for another felony from that stated, the person is not liable to an action for malicious prosecution. (Citing *Heyward* v. *Cuthbert*, 4 McCord. 354; *McNeely* v. *Driskill*, 2 Blackf., 259; *Bennett* v. *Black*, 2 Ala. [1 Stewart], 495.) *And if one be sworn before the grand jury to facts not amounting to a felony, and the jury find a felony, he is not responsible for the indictment.*"

In *Bennett* v. *Black* (*supra*), the court said : " We are of opinion that if a justice of the peace or any other judicial officer to whom application may be made for a warrant for the apprehension of offenders against the criminal law, was by mistake of judgment to conceive that to be a felony which, from the facts sworn to, did not amount to that offence, and should the party complained against be committed to jail, it would not subject the party complaining to an action of this sort (malicious prosecution). If it would, it would subject every prosecutor to an action for the mistakes of the criminal judge, which is too unreasonable to be admitted."

In *McNeely* v. *Driskill* (2 Blackf., 259), A made an affidavit before a justice of the peace, stating that· he had lost certain goods, which he believed were concealed in the possession of B. The justice thereupon issued a warrant against B for larceny. B was arrested on the warrant and afterward acquitted It was held that A's statement contained no criminal charge, and that he was, therefore, not liable to B in an action for criminal prosecution. The court said: " This action is brought for wrongfully and maliciously prosecuting the appellee on a charge for larceny. The affidavit shows a state of facts on which an action of trover might have been maintained, but it contains no charge of larceny against any person. The appellant had lost his property and wished to recover it. He states that fact to a justice of the peace. The justice *forms his judgment* upon the facts stated, and issues his mandate to an officer to search for the property, and to bring the person in whose possession it may be found before himself or some other justice of the peace. This was an error, but it was an error of the justice and not of the appellant. If a justice of the peace, by a mistake of judgment, conceive an act to be a felony which is not one, and in consequence of that mistake causes an innocent person to be arrested and imprisoned, the law will not hold the person who made the complaint responsible in this form of action for the consequences of such errors."

The rule was 'stated by ROBERTSON, Ch. J., in *Burns* v.

*Erben* (1 Rob., 559), in the following terms: "If the facts sworn to by the malicious prosecutor do not furnish *prima facie* grounds to infer that a crime has been committed, only the magistrate issuing the warrant is liable." These cases must of course maintain that no action will lie though malice on the part of the prosecutor exists, since without that ingredient no action for malicious prosecution is ever sustainable.

In *Cohen* v. *Morgan* (6 Dowl. & Ryl., 8), it appeared that the defendant had lost a bill of exchange which he supposed to have been stolen. He went before a magistrate and related the facts and circumstances of the loss. The magistrate granted this warrant to apprehend A B, on a charge of having "*feloniously stolen*, taken and carried away the bill of exchange," language which the defendant did not use when he laid his information. On subsequent investigation of the case it turned out to be no felony. It was held that an action on the case would not lie for maliciously procuring the magistrate to grant his warrant. The court, per Lord TENTERDEN, said that it was for the justice, after the defendant had related the facts and circumstances of the loss, to say whether those facts amounted to a felony, to determine whether he would or would not issue his warrant to apprehend the party accused. After the defendant had related the facts of the case, the justice's clerk, instead of writing down what the man really said, wrote down what he took to be the fact as mere matter of assumption. The defendant never used the words "feloniously stolen, taken and carried away," as it would appear that he did, judging by the language of the information.

In *Carratt* v. *Morley* (1 Gale & Davison, 275), a similar rule was laid down in an action for trespass. An action was there brought against Morley, one of the defendants, to recover damages for false imprisonment of the plaintiff. It was shown that Morley appeared before the commissioners of an inferior court who had jurisdiction to try cases of debt where the debtor resided within a certain district. He stated his case to the court, and the commissioners entertained a claim against a person, whom Morley's statement

showed did not come within the jurisdiction. It was held that he was not liable. The court, after citing *Cohen* v. *Morgan (supra)*, said: "It is clear from that and other cases and upon principle, that a party who merely originates a suit by stating his case to a court of justice is not guilty of trespass, though the proceedings should be erroneous or without jurisdiction." (1 Gale & Dav. 282, 283.)

The principle governing this class of cases is thus stated by GRAY, *arguendo*, in *Farley* v. *Danks* (4 Ell. & Black., 497). As his argument was made to show the *plaintiff's* right to recover in an action for malicious prosecution, and as his reasoning was closely followed by the court in its decision, it goes undoubtedly as far as any case can be found to proceed. He said: " If a party *falsely and maliciously, and without probable cause* charged another with a felony, a robbery for instance, he would be liable for a malicious prosecution for felony, though the facts to which he swore did not technically show a robbery. *It would, indeed, be otherwise, if he simply stated the facts, and did not suggest that there was a robbery.* That was the principle of *Leigh* v. *Webb* (3 Esp., 165), and *Milton* v. *Elmore* (4 C. & P., 456.) " Here the counsel for the plaintiff assumes that all the ingredients of an action for malicious prosecution exist, viz., malice, falsity and want of probable cause, and yet concedes that an action is not maintainable against one who simply makes a statement, without any suggestion that a crime has been committed.

In *Tempest* v. *Chambers* (1 Starkie, 55) one count in a declaration was for maliciously, and without probable cause, procuring the plaintiff to be arrested on a charge of felony. The allegation was, that the defendant appeared before a magistrate and charged the plaintiff with having *feloniously* taken away a pair of shutters belonging to the defendant. Upon the information being produced, it appeared on the face of the information, that the defendant had charged the plaintiff with having unlawfully taken away a pair of shutters belonging to the plaintiff and having converted the same to his own use. Lord ELLENBOROUGH was of opinion that the

variance was fatal, since it appeared that the defendant had
not charged the plaintiff with a felony, but with a bare tres-
pass in taking away the shutters, for which no warrant ought
to have issued. This case is a clear recognition of the doctrines
maintained in the opinion, since, if the mere statement of
the facts was the moving cause of the arrest, then the defend-
ant did charge the plaintiff with a felonious theft of the goods.

The case of *Milton* v. *Elmore* (4 Carrington & Payne,
456) is strongly in favor of the defendant. In that case a
servant of Elmore stated before a magistrate that Milton
came into his employer's (Elmore's) yard and took from a stable
there two geldings, the property of Elmore, and rode them
away, though he was told that he must not. It was held that
this statement did not support a count for malicious prosecu-
tion, which alleged that the information charged Milton with
having feloniously stolen and ridden away with two geldings.
It is plain that in this case, also, if the statement made by the
servant was the procuring cause of the arrest, he did, in point
of law, charge Milton with having stolen the geldings. The
variance was only fatal on the ground that the statement of facts
had no natural connection with the magistrate's proceedings.

Some of the cases which are alleged to be in conflict with
these views, will now be noticed. One of these is *Farley* v.
*Danks* (*supra*). In this case, the declaration charged, that the
defendant falsely and maliciously, etc., filed a petition for
adjudication of bankruptcy against the plaintiff, and caused
and procured him to be declared bankrupt. It was held that
this charge was sustained by proof, that the defendant peti-
tioned for the adjudication, and by depositions false in fact,
and maliciously made, led the commissioner to adjudicate the
bankruptcy, though it appeared that, even if the depositions
had been true, the adjudication could not have been supported
in law. It, however, distinctly appeared in that case that the
defendant stated in his petition that he had been informed
and believed that plaintiff " did lately commit an act of bank-
ruptcy, within the true intent and meaning of the act of
bankruptcy," and made affidavit that the allegations in the

petition were true. This case steers wide of the one at bar, since there was a *specific allegation of an act of bankruptcy*, and not a mere general statement of facts from which the commissioner of bankruptcy might have drawn his own conclusion. It was on this point that Gray, of counsel for the plaintiff, relied in making the distinction which I have already quoted from him. The language of the court must be construed from this point of view ; moreover, it must be considered that in this case the defendant set the proceedings in motion. He made the affidavit and presented it to the commissioner as the basis for some action. In the case at bar, the defendant simply conversed · with the district attorney, who, of his own motion, instituted the proceedings. *Farley* v. *Danks*, does not controvert the general principle that the defendant must be the procuring cause of the arrest, but maintains, under a state of facts not parallel with those now under discussion, that the defendant did cause the wrongful act.

*Anderson* v. *Buchanan* (Wright's [Ohio] Rep., 725), is not opposed to these views. In that case, Anderson was actively the prosecutor of the charge, and made an affidavit which was claimed to be insufficient in form. The court said : " The present plaintiff seeks to avoid responsibility for his malicious prosecution of Anderson, on account of the want of technical precision in the preliminary steps which he took to subject him to criminal punishment. He commenced and carried on the criminal charge in his own way, and when defeated would avoid responsibility by alleging his own mistakes. A convenient method of escaping responsibility — which secures a malicious man the opportunity of wreaking his vengeance with impunity, because he so shaped his proceedings that the law would adjudge them insufficient if objected ·to. In no view can it be a defence to this action, that the proceedings in the criminal prosecution were erroneous." (P. 726.) The whole opinion proceeds upon the active interference of Buchanan, the defendant, who alleged in his affidavit perjury. The case thus falls within the rule in *Farley* v. *Danks* (*supra*), and as has been shown is not parallel with the case at bar.

*Collins* v. *Love* (7 Black., 416), which is very meagerly reported, apparently turns upon the same point. It was a question as to the validity of a pleading. The count is presented in the report in the following terms : " The defendant, etc., intending, etc., went before a justice, etc., and without, etc., *charged the plaintiff*, etc., and thereupon falsely, etc., and without, etc., procured the justice to make his warrant, etc." It was held, that the count was not objectionable because the alleged charge did not authorize the issuing of the warrant. It will be observed that in this case the defendant was the actor in the proceedings, and must also have *charged the crime* for which the justice issued the warrant. This is the reasonable interpretation of the words " charged the plaintiff, etc. It is but another illustration of the rule in *Farley* v. *Danks* (*supra*).

The case of *Morris* v. *Scott* (21 Wend., 281) has been so fully considered by the chief commissioner that it is only necessary for me to say that I concur in his exposition of it, and do not see that it conflicts with the view taken in this opinion. So far as it holds that an action for malicious prosecution will lie where a court has no jurisdiction, it is controverted by *Turpin* v. *Remy* (2 Black., 211) ; *Bixby* v. *Brundagee* (2 Gray, 129), and 1 American Leading Cases, 208, 209 (4th ed.). It cannot be pressed so far as to maintain that an action of trespass will lie against one who merely makes a statement to an officer having no jurisdiction upon which he proceeds to act, without controverting *Carratt* v. *Morley* (*supra*), and other cases already considered.

On the whole, the judgment of the court below should be reversed.

For affirmance: GRAY, EARL and REYNOLDS, CC. ; for reversal: LOTT, Ch. C. and DWIGHT, C.

Judgment affirmed.