**HOWER, Plaintiff-in-Error v CLERKIN et, Defendants-in-Error.**

Ohio Appeals, 9th District, Summit County.

No. 1777.   Decided January 8, 1931.

Lee J. Myers, Akron, for plaintiff in error.

Slabaugh, Seiberling, Huber & Quinther, Akron, for defendants in error.

### OPINION

By FUNK, P. J.

Plaintiff in error commenced his action in the Common Pleas Court against defendants in error for damages for malicious prosecution.

The defendants filed separate answers, each of which, after admitting that plaintiff had been indicted by the grand jury for embezzlement and arrested, confined and compelled to give bail for his release, and that a nolle prosequi was thereafter entered on the indictment, was a general denial.

The parties are in the same relation in this court as in the trial court and will be referred to merely as plaintiff and defendants.

During the trial plaintiff was required to elect as to which defendant he would proceed against, and chose the Taplin-Rice-Clerkin Co.

At the conclusion of the evidence offered by plaintiff, the court, on motion of defendant, directed a verdict in its favor, and on which judgment was entered, for the sole reason that the testimony of William Clerkin given before the grand jury, whether true or false, did not state facts that constituted a criminal offense.

The case is here on error to reverse that judgment.

The prosecution grew out of a contract between plaintiff and the defendant company, in which said company employed plaintiff as a salesman on a commission basis and afterwards advanced to plaintiff $150 to apply on the purchase price of an automobile in which to travel for the defendant company. All negotiations on behalf of the company were made by said William Clerkin.

The only question before this court is, Did the trial court err in directing said verdict?

Counsel for plaintiff contends that it was error, for the reason that if the testimony was maliciously false the defendant is liable whether such testimony stated facts constituting the crime charged in the indictment or some other criminal offense or charged no crime at all. In other words, if said testimony of Clerkin was maliciously false, the defendant is responsible whether or not the indictment was the result of erroneous conclusions of law or fact on the part of the prosecuting attorney or the grand jury, and that there is no difference as to such liability between the procurement of a warrant on an affidavit before a magistrate and a warrant issued on an indictment returned by the grand jury.

No claim is made that the indictment was defective in form or that it did not properly charge the crime of embezzlement.

First, was the testimony of said Clerkin before the grand jury maliciously false, and did it charge the crime of embezzlement or any other crime against the laws of the state?

The uncontradicted testimony together with the documentary evidence (the exhibits) as disclosed by the record, clearly show that on Saturday, April 11, 1925, plaintiff entered into a contract to work for defendant company, and at which time the territory and commission he was to have and other details were agreed upon; that plaintiff and Clerkin went to Pennsylvania the next day —Sunday, April 12; that they saw defendant company's distributing agent at Pittsburgh, Pa., on Monday, April 13, and conferred with him about co-operation between them and installation of furnaces to be sold by plaintiff; that plaintiff quit working for the Banner Mahoning Co. on April 15 and began work that day or the next for the defendant company; that the check of $150 was given to plaintiff by defendant company on April 27 as advance commission, to be used by him on the purchase price of an automobile; that plaintiff

secured two orders, at least one of which was handed to William Clerkin on May 2, at which time plaintiff asked for further advances on unearned commissions for living and traveling expenses; that said defendant company, by said Clerkin as its representative, refused to advance more money to plaintiff for such expenses; that on May 4 plaintiff sought employment with the Wise Furnace Co., that they employed him and advanced money to him for expenses on May 6, that plaintiff began work for the Wise Furnace Co. on May 6 or 7, and that he made his first report to said company on May 11; that said defendant William Clerkin was the president of said Taplin-Rice-Clerkin Co., in the active management of its business; that said William Clerkin testified before the grand jury on June 30, and that an indictment was returned by it against plaintiff for embezzlement upon the testimony of said William Clerkin as the only witness before it and filed on July 1; that plaintiff was arrested thereon and gave bail; and that a nolle prosequi was entered on said indictment by order of court on Dec. 17, 1925, upon good cause shown and the request of the prosecuting attorney.

A transcript of the testimony of said William Clerkin given before the grand jury was admitted in evidence and is a part of the bill of exceptions.

Said testimony is to the effect that on April 18, 1925, plaintiff contracted with the defendant company to work for it on a commission basis; that the territory and the commission plaintiff was to have were then and there agreed upon and that plaintiff agreed to begin work on May 1; that on April 20 said Clerkin, together with plaintiff, called upon one of the company's distributing agents at Pittsburgh, Pa., and in the territory assigned plaintiff and conferred with said agent as to co-operation between them and the installation of furnaces to be sold by plaintiff; that on April 27 plaintiff came to said Clerkin and said that he was in position to carry out his contract and would begin work promptly on May 1; that said Clerkin should get the printed matter, list of agents and all data ready for him, which said Clerkin did; that plaintiff then said that he needed some "expense money advanced against unearned commissions" and asked for $150; and that said Clerkin then had the bookkeeper for defendant company give plaintiff the company check for that amount as "advanced expenses."

Said Clerkin then said to the grand jury, concerning said conversation on April 27 and the giving of the check. that "I didn't know that at this time when I was giving him this check that he had already hired out to Wise, of the Wise Furnace Company, which developed afterwards when I got into the investigation."

Again, in testifying about the conversation when plaintiff asked for further advancements, which said Clerkin said to the grand jury was "on the second Saturday of May," he further said, "Now you will remember that, during this period I am telling you, he was an

employee of the Wise Furnace Company, making daily reports there. Mr. Wise told me that himself. * * * His first daily report, he began work on the first day of May, the very time his contract began with us."

At another place said Clerkin said to the grand jury, "I don't think he ever entered our employ at all. * * * I think ne was in the employ of the Wise Furnace Company and simply took this method of getting $150 out of me and thought probably he would not be caught up."

At another place said Clerkin said, "Now my complaint announced is simply this: that there is not any proof at all, from anything that he has said or done, that he ever entered our employ at all."

There are other parts of the testimony of the witness Clerkin before the grand jury to the effect that plaintiff had misapplied said $150, misrepresented where he had been, and failed to report his expenses paid out of said amount, and was evading defendants for that reason—all tending to show that plaintiff had obtained said $150 by fraudulent representations.

It was admitted by counsel for defendant in argument that said Clerkin was about a week in error in some of his dates but that they were not important and that there may have been some other slight discrepancies as to matters not material but that his testimony was in the main correct, especially on all material matters.

The question thus presents itself: What is the issne and what is a material matter in a grand jury investigation, which has no pleadings?

The question at issue in an investigation before a grand jury has been held to be "the subject-matter of the inquiry," which in the instant case was the manner in which plaintiff obtained said $150 and his conduct in relation thereto. The rule as to materiality in such an investigation is said to be "any testimony which might properly affect the bringing of an indictment is material" and "whether the false testimony has a natural effect or tendency to influence" the bringing or not bringing of an indictment against a person whose conduct is being investigated.

It is, of course. clear that if plaintiff was not in the employ of the defendant company, he could not be guilty of embezzlement; but we think it is just as clear that what the witness Clerkin said to the grand jury did charge the plaintiff with obtaining property by false pretenses and that this is an important if not a determining fact in this case. There is much evidence in the record to show that much of what said Clerkin told the grand jury was untrue and that consequently said charge was unture. The question of the truth or falsity of what said Clerkin told the grand jury was for the jury to determine from all the evidence, under proper instructions from the court.

In view of the testimony of said Clerkin that Mr. Wise told him that plaintiff began work for the Wise Furnace Co. on May 1 and that plaintiff was working for another company at the very time he was to have been working for defendant company, it would seem that at least some of the dates would be of some importance in this case and should have been correctly stated, especially since they could easily have been ascertained from Clerkin's own correspondence, check and other matters relating thereto, which he said he had in his files, and since he testified that he had investigated the matter, and since he could, by a little effort, have verified definitely just when plaintiff applied for and began work for the Wise Furnace Co.

This brings us to the question: Assuming that the testimony of said Clerkin was wilfully and corruptly false as to material matters —which is a question for the jury to determine under proper instructions from the court—is defendant liable in damages for malicious prosecution if the matters testified to did not constitute the crime of embezzlement but did constitute the crime of obtaining property under false pretenses? In other words, Is the defendant responsible for false conclusions of fact and law by the grand jury or the prosecuting attorney?

The only case in Ohio concerning the liability of a witness giving false information before a grand jury is **Kintz v Harriger, 99 Oh St, 240.** The third paragraph of the syllabus in that case reads:

"3. Perjured testimony given wrongfully, maliciously and wilfully before a grand jury may * * * be offered in evidence in support of * * * an action brought by the individual for 'an injury done him in his * * * reputation.' "

There is nothing in this case of Kintz v Harriger to indicate the responsibility of a witness for an erroneous conclusion of fact or law on the part of the grand jury or the prosecuting attorney, or whether it is necessary that such perjured testimony should constitute a crime under the laws of Ohio. These questions have never been decided in any reported case in this state. The sole question before the court in Kintz v Harriger was as stated in the third syllabus, and is also so stated in the first paragraph of the opinion.

Having found that the testimony of said Clerkin before the grand jury did charge a criminal offense against the laws of Ohio, it is not necessary for us to pass upon the contention of counsel for plaintiff that the defendant Clerkin would be liable in this action even if his testimony before the grand jury did not constitute a criminal offense.

There is much conflict in the decisions of the several states upon the responsibility of a witness whose testimony before a grand jury is maliciously false. Much of the seeming conflict in the decisions

of the courts of the several states seems to grow out of the failure of some of the courts to carefully distinguish or set out in the opinion the difference between where one goes before a magistrate and has a warrant issued upon his personal affidavit and carries on the criminal charge in his own way, and where one goes before the grand jury and the prosecuting attorney and barely submits his testimony or even merely states the facts to a magistrate, who determines for himself whether or not a crime has been committed.

There is a line of cases holding that a witness who maliciously gives false testimony before a grand jury is responsible in an action for malicious prosecution, even though his testimony does not charge a crime of any kind. Among such is the case of Dennis v Ryan, 65 N. Y., 385.

Counsel for defendants call attention to the two dissenting opinions reported along with the majority opinion in this case.

From a careful reading of these dissenting opinions, it appears that each of them, in commenting upon some of the cases cited by the majority opinion, point out that the cases cited in the majority opinion do not support the conclusion reached in that opinion, for the reason that the testimony given before the grand jury in the cases cited charged a particular crime and that the subsequent proceedings were in accordance with that information. One of the judges, in dissenting, says, concerning this phase of the case:

"It seems to me that the correct rule is, that to make the person who presents the charge liable, the facts, **as he states them,** must be sufficient to constitute a crime. If that were the case, it may plausibly be maintained that he has set in motion the proceeding, even though the prosecuting officer drew the indictment imperfectly or managed the prosecution so languidly or inefficiently that no conviction could be secured."

The opinion of the court, together with the two dissenting opinions, thoroughly argue pro and con the question of the responsibility of the witness who testifies falsely before the grand jury, and it is apparent from the arguments that one of the authorities considered hold that if the testimony given before the grand jury charged a crime it would be a defense if the grand jury returned an indictment for some kindred offense not sustained by the testimony of the witness; in other words, they are all to the effect that the fact that the grand jury returned a wrong or defective indictment, is no defense in an action against such witness for malicious prosecution, where such testimony charged a criminal offense.

Upon principle, and which seems to be sustained by the weight of authority in other states, we hold that the fact that the grand jury indicted the plaintiff for embezzlement instead of the crime

charged by his testimony, which is that of obtaining property under false pretenses, is no defense in this case, and that the court therefore erred in directing a verdict for the defendant company.

This holding renders unnecessary any discussion of the contention of counsel for defendant that "Advice of counsel is always a complete defense, particularly when the counsel is a public prosecutor."

Counsel for defendant further contend that one of the essential allegations of the petition is that a nolle prosequi was entered on the indictment against the plaintiff without his consent or procurement, and that there is no evidence to sustain such allegation, and that consequently the judgment should stand. Counsel rely upon the case of **Douglas v Allen, 56 Oh St, 156,** for their contention.

From a careful reading of this opinion, we think it does not sustain this contention of counsel for defendant. Moreover, the journal entry shows that the nolle prosequi was entered for good cause shown, in open court, upon the recommendation of the prosecuting attorney, and there is nothing in the record to show that plaintiff had procured or consented to it.

Counsel for defendant further contend that the proceedings herein were barred by the statute of limitations and that the judgment should therefore be affirmed.

Upon this question it is sufficient to say that when this statute is relied upon as a bar, it must be specially pleaded, which was not done in the instant case.

Tousley v Moore, 30 Oh St, 184.
Sturges v Burton, 8 Oh St, 215.
McKinney v McKinney, 8 Oh St, 423.
Schlarman v Heyn, 19 Oh Ap, 64.

The judgment of the Common Pleas Court is therefore reversed, and the cause remanded for further proceedings according to law.

PARDEE and WASHBURN, JJ., concur in judgment.