### STATE ex rel WINTERFIELD, Plaintiff, v. INDUSTRIAL COMMISSION, Defendants.

Ohio Appeals, Second District, Franklin County.

No. 3758.   Decided October 27, 1944.

MONTGOMERY, J., of the Fifth Appellate District sitting by designation in place of Barnes, P. J.

J. W. Starritt, Toledo, for plaintiff.

Thomas J. Herbert, Atty. Genl., Robert E. Hall, and Albertus B. Conn, Asst. Attys. Genl., Columbus, for defendant.

## OPINION

By HORNBECK, J.

This is an action in mandamus praying that the defendant Commission be required to pay the plaintiff "a balance of $695.62 for temporary total disability and the maximum amount for permanent total disability, unless the application of mechanical means to plaintiff's rupture is utilized, in that event for a further allowance for partial disability".

The salient facts essential to an appreciation of the question presented are, that on July 28, 1941, plaintiff was injured while in the employment of the Toledo Stamping and Manufacturing Company, a contributor to the Workmen's Compensation Fund. The injury resulted in bilateral inguinal herniae. Plaintiff made claim on August 15, 1941, to the Commission for an allowance for injuries suffered and on hearing, January 28, 1942, the claim was denied by the Toledo District Board of Claims. The application for rehearing was denied, January 28, 1943, two and one-half years after the injury, the Commission finding that claimant did not sustain an injury in the course of and arising out of his employment and that his disability (bilateral inguinal herniae) is not the result of injury. Thereafter, claimant appealed from the refusal to grant him a rehearing to the Common Pleas Court of Lucas County where he secured a verdict and on May 19, 1943, a judgment that he "is entitled to participate in the State

Insurance Fund", and a further order that his attorney be allowed a fee from the State Insurance Fund of 20% of the first $500.00 awarded to claimant by the Commission plus 10% of any sum in excess of $500.00 awarded, not to exceed $500.00. The Commission appealed from the judgment which was affirmed by the Court of Appeals for Lucas County on the 14th day of July, 1943. Thus, almost three years after his injury plaintiff had established by judicial decree that he was entitled to participate in the State Insurance Fund set up for employees injured in the course of their employment.

On August 3, 1943, the Commission made the following order:

"By virtue of the judgment obtained by the claimant in the Common Pleas Court of Lucas County it is ordered that temporary total compensation be awarded from July 29, 1941, to August 18, 1941, incl., less the first seven days of disability. Since it appears from the proof on file that claimant does not desire an operation for the correction of the bilateral inguinal herniae, he is authorized to purchase a suitable truss if one has not already been purchased; that the fee bill of Dr. H. G. Bruss be paid as approved."

Statutory attorney fees to J. W. Starritt, counsel for claimant, cost bill of Clerk of Courts, Lucas County, were ordered paid. The items authorized to be paid were: Dr. Harold G. Bruss, $3.00; J. W. Starritt, legal service for client, $8.10; Clerk of Courts, $12.90; compensation to claimant, August 5, 1941, to August 18, 1941, $37.50.

As early as July 28, 1941, Dr. Mossman of the medical staff of the Commission examined the claimant, confirming the finding of Dr. Bruss, claimant's physician, as to the herniae and recommended to the Commission that applicant be provided funds for the purchase of a truss. With the original application of claimant was the affidavit of Dr. Bruss, that claimant suffered a direct inguinal hernia on both right and left sides as a result of his injury in a later report, stamped as received by the Commission on August 27, 1941, Dr. Bruss, by affidavit, stated to the Commission that the claimant suffered a permanent disability and that he would be able to perform light work only when he gets a truss. In the testimony taken on the rehearing, it developed that claimant had purchased a truss on the 7th of February, 1942, and that he did not work until April 1, 1942. It further appeared that

claimant was indigent much of the time that he was not at work and was on relief. He attempted to secure a truss through his former employer, offering to have the money therefor taken out of his wages, but he was refused. Finally, he had to sell a calf to secure the funds to get the truss.

On March 29, 1943, this Court in **State, ex rel. Waller v Industrial Commission, 38 Abs 514,** said that the "Hernia Rule" of the Commission could not be enforced to preclude a proper award to a claimant for impairment of earning capacity, during the continuance thereof, resulting from a compensable injury, under §1465-80 GC. This judgment was affirmed by the Supreme Court of Ohio on November 17, 1943. **142 Oh St 193.**

The Commission by its action of August 3, 1943, notwithstanding the Waller decision, invoked its hernia rule and by its order concluded the full right of claimant to compensation up to that time by allowing him two-thirds of two weeks average wage for temporary total disability.

This order was improper and did not award to plaintiff the compensation to which he was entitled by reason of his judgment and upon the undisputed medical and lay testimony.

It is urged by counsel for the Commission that the extent of plaintiff's impairment of earning capacity is a medical question only and that the record affords no such proof. We do not accept this statement as an entirely correct principle of law. The bilateral inguinal herniae have not been questioned. The plaintiff could testify whether or not he could work in connection with his general physical condition. 1 Elliott, Ev. Par. 679. Likewise his housekeeper properly was permitted to testify as to his condition as manifested by his physical reactions. Both of them stated the length of time during which he was not able to and did not work.

But the complete answer to the claim that medical proof is not forthcoming is found in the fact that the Commission found that the plaintiff was totally disabled from his injury for three weeks upon the identical evidence which it urges is inadequate. This evidence is not separable and, if it establishes total disability for three weeks, it likewise fixes it up to about April 1, 1942.

After the order of August 3, 1943, plaintiff's attorney remonstrated with the Commission, whereupon, through its legal counsel claimant was informed that, if additional compensation was to be claimed, he should file an application on Form 85-A within 14 days after the date of the letter be-

cause "the Commission is precluded from awarding additional compensation for a period of more than two years prior to the date of filing said application". Claimant, as suggested, promptly filed his application for additional compensation.

If the order of August 3, 1943, had validity, then under the hernia rule, no increase in compensation could have been granted because obviously there had been no change in claimant's physical condition. The suggested procedure, unless the Commission abandoned its hernia rule, offered claimant no promise of an additional award. There had been no failure of medical proof as to the total disability of claimant but in the second application claimant's physician, among other things, stated that claimant suffered right and left inguinal herniae, had been treated every week, that his injury resulted in permanent disability if truss was not worn, **and in 33% physical impairment, if truss was worn,** that claimant wore a truss which was fairly comfortable. (Emphasis ours.) So far as we can find from the record, no member of the medical staff of the Commissin ever examined claimant to determine the extent of disability suffered by him.

In February, 1944, Mr. Bert Buckley of the legal staff of the Commission filed a complete and comprehensive report on the proceedings in the claim of plaintiff, and therein he states, that "the claim was reviewed by Dr. Neeland on September 20, 1943, and medically disapproved", etc. We do not find the Dr. Neeland report, but assume that it was made. If so, in September, 1943, the medical staff was standing on the order of August 3, 1943.

On February 24, 1944, the Commission made the following order:

"That the application for additionnal compensation beyond date of last payment be disapproved for the reason the proof of record shows a lack of medical proof, as to new or changed conditions since the claim was last considered by the Commission on August 30, 1943; **that following the decision of the Common Pleas Court of Lucas County, that the claimant is entitled to participate in the State Insurance Fund, that claimant be given a physical examination by the Commission to establish the degree of liability, if any, existing as a result of the alleged injury.**" (Emphasis ours.)

The action suggested in the emphasized part of the order would have been appropriate and timely if taken

immediately succeeding the knowledge of the Commission that claimant was claiming impairment of earning capacity.

The only new principle involved in the Waller case, supra, was in giving application in hernia cases to the law announced in **Industrial Commission of Ohio v Royer, in 1930, 122 Oh St 271,** wherein Chief Justice Marshall directed attention to the fact that even though it appear, as it did in that case, that a claimant was able to earn more after her injury than before, she was not thereby precluded from an allowance for impairment of earning capacity, under **§1465-80.**

Following this order of February 24, 1944, the Commission sent the applicant a notice there would be a hearing on his claim in Columbus on the 14th day of March, 1944, on his application for reconsideration, and suggested that he and his counsel attend. This notice, among other things, stated that the claimant would not be reimbursed for expense incurred in coming to the hearing unless a subpoena has been issued for his attendance, and no subpoena was issued, nor was the claimant directed to appear for physical examination which would have assured him the necessary expenses incidental to his trip to Columbus. Thereafter, the Commission on March 14, 1944, made this order:

"This claim coming on to be further heard, pursuant to the Commission's order of March 7, 1944, (which was the fixing of a hearing date as March 14, 1944) claimant and his counsel having been notified as to the time and place of the hearing, the Commission, after considering the statements made at the hearing, and from the proof of record, finds that the claimant's application filed March 2, 1944, was not well taken. It is, therefore, ordered that the same be dismissed, and that the Commission's former order of Feb. 24, 1944, be affirmed."

When this last order was made, the Commission had not availed itself of its right to require a physical examination, although no such examination had been made by direction of the Commission since July, 1941. Claimant then and for many months had on file and before the Commission direct and express proof on every issue essential to his pending claim. His physician had indicated his impairment of earning capacity with the use of a truss to be 33 per cent. His earnings during the period of his employment succeeding April 1, 1942, were in the hands of the Commission.

In this situation, the Commission could not properly deny the claimant an adjudication of the extent of the impairment of his earning capacity although it could avail itself of the opinion of its own medical staff on this question, which it did not do.

Upon the whole record then, it becomes evident that a ▋ writ of mandamus should issue directing the Commission to award to the claimant the statutory allowance for total disability as a result of his injury, from August 18, 1941, to April 1, 1942, the time when claimant's total disability terminated, the proof disclosing that he purchased the truss on the 7th of February, but that he did not work until April 1, 1942.

And that the claimant's application for further consideration be reconsidered; that he be awarded a sum representative of the impairment of his earning capacity, under §1465-80 GC. If the Commission desires a report of its medical staff relative to the extent of the physical impairment of claimant, it should early take appropriate steps to get such information. If not, then it should make determination upon the evidence now in the record which is ample to afford a basis for determination of the extent of the impairment of claimant's earning capacity.

The writ will be issued in accord with this opinion.

GEIGER, J., and MONTGOMERY, J., concur.