737 F.2d 257
 Medicare&Medicaid Gu 34,013
Elias RAND, M.D., Plaintiff-Appellant,
v.
Cesar A. PERALES, as Commissioner of the State of New York
Department of Social Services, and Joseph D'Elia,
as Commissioner of the Nassau County
Department of Social Services,
Defendants-Appellees.
 No. 869, Docket 83-7874.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 29, 1984.
Decided June 15, 1984.
 
 Marvin L. Tenzer, P.C., New York City (Scott B. Lunin, New York City, of counsel), for plaintiff-appellant.
 Michael F. Tietz, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Judith A. Gordon, Asst. Atty. Gen., New York City, of counsel), for defendant-appellee Cesar A. Perales.
 Robert O. Boyhan, Deputy County Atty., of Nassau County, Mineola, N.Y. (Edward G. McCabe, County Atty., Mineola, N.Y., of counsel), for defendant-appellee Joseph D'Elia.
 Before KAUFMAN, OAKES and WINTER, Circuit Judges.
 WINTER, Circuit Judge.
 
 
 1
 Dr. Elias Rand appeals from Judge Altimari's order dismissing his complaint which alleged a violation of 42 U.S.C. Sec. 1983. Judge Altimari held that the denial of Dr. Rand's claims for Medicaid reimbursement accorded with due process and that his complaint against Cesar Perales was barred by the Eleventh Amendment. We affirm.
 
 BACKGROUND
 
 2
 At the relevant times, Dr. Rand was a licensed physician participating in the New York State Medicaid Program. Defendant Perales is the Chief Executive Officer of the New York State Department of Social Services ("State DSS"), the agency charged with the overall administration of that program. Defendant Joseph D'Elia is the Commissioner of the Nassau County Department of Social Services ("Nassau DSS"), which processed Medicaid reimbursement claims prior to November, 1979. At issue in this lawsuit are some 839 Medicaid claims totalling $57,318.38 submitted to Nassau DSS by Dr. Rand between 1973 and 1979 but never paid.
 
 
 3
 During 1977 and 1978, Nassau DSS undertook an audit of various Medicaid reimbursement claims submitted by Dr. Rand. In the course of this audit, Nassau DSS stopped paying at least some of those reimbursement claims. In November, 1977, Dr. Rand brought an Article 78 proceeding in New York State Supreme Court, seeking a court order requiring Nassau DSS to reimburse him for $5,507.00 in Medicaid services which he had allegedly provided in 1974. In 1978, the Article 78 action was withdrawn by stipulation subject to restoration upon ten days' written notice by Dr. Rand's attorney. This action has never been restored to the calendar.
 
 
 4
 On May 23, 1978, Nassau DSS notified Dr. Rand by certified mail that as a result of discrepancies discovered in the audit, he should attend a "provider discussion" held pursuant to then 18 N.Y.C.R.R. Sec. 515.2[1]. This meeting took place on July 5, 1978 and concerned Dr. Rand's "inappropriate billings." The parties disagree sharply about what was said at the meeting. Nassau DSS claims that Dr. Rand admitted the submission of reimbursement claims for patients he had not treated and explained his failure to produce certain patient records at the meeting on the ground that he had never treated the patients. Dr. Rand categorically denies that he made such statements. It is agreed, however, that Dr. Rand refused to answer certain questions on the advice of counsel because of a pending criminal investigation against him. In addition, Dr. Rand does not contest Nassau DSS's claim that he brought no records to the discussion, despite a request that he do so.
 
 
 5
 On July 12, 1978, one week after the provider discussion, Nassau DSS sent Dr. Rand a disqualification notice by certified mail. This notice informed Dr. Rand that his Medicaid practices were inconsistent "with the Medical Assistance Program's policies, standards and regulations." The letter indicated that Dr. Rand had committed the following violations:
 
 
 6
 1. Billing for services not ordered by physicians;
 
 
 7
 2. Overbilling for procedures that could be combined under one fee;
 
 
 8
 3. Billing for dollar amounts in excess of established Medicaid amounts for specified procedures;
 
 
 9
 4. Billing for medically non-indicated procedures;
 
 
 10
 5. Lack of documentation of procedures billed;
 
 
 11
 6. Billing for office visits while patient is in hospital;
 
 
 12
 7. Unnecessary retention of patients in hospital for testing purposes; and
 
 
 13
 8. Performing medical procedures without demonstrated medical necessity.
 
 
 14
 "On the basis of these findings" and pursuant to New York law, the July 12th letter further informed Dr. Rand that he was being disqualified "from participation in the Medicaid Program on a statewide basis" and that Nassau DSS would seek "[r]estitution of all Medicaid funds inappropriately received by you." The letter concluded by informing Dr. Rarnd that under New York law he could contest Nassau DSS's determination by requesting an administrative hearing. Finally, Dr. Rand was informed that at that hearing he would have the right to be represented by his attorney, to confront witnesses, to present evidence on his behalf and to subpoena witnesses. Dr. Rand had fifteen days to request a hearing. Such a request would stay intended administrative action until a decision following the hearing was issued.
 
 
 15
 Dr. Rand requested the hearing mentioned in the July 12th letter, but it was postponed several times at his counsel's request. Because of pending criminal investigations, Dr. Rand ultimately requested that "the hearing be adjourned sine die." The hearing has never taken place.
 
 
 16
 On December 5, 1979, Dr. Rand wrote to Nassau DDS concerning the status of his Medicaid reimbursement claims. In response, Nassau DSS informed Dr. Rand that the claims at issue were "being held pursuant to an audit by the Medicaid Investigative Team." On March 5, 1982, Dr. Rand against wrote Nassau DSS concerning his claims. In response, Nassau DSS stated that the claims "were rejected in 1978, and are not subject to reimbursement."
 
 
 17
 On February 17, 1983, Dr. Rand commenced this action under 42 U.S.C. Sec. 1983. He alleged that the defendants had violated his constitutional rights by failing to give him adequate notice of the denial of his pending reimbursement claims, thereby depriving him of property without due process of law.
 
 
 18
 On April 15, 1983, the State DSS gave notice that it would move to dismiss pursuant to Fed.R.Civ.P. 12(b). Nassau DSS never moved to dismiss but did file an amended answer. On July 8, 1983, Magistrate Jordan recommended that the Rule 12(b) motion be granted. On September 19, 1983, Judge Altimari dismissed the complaint, concluding that even assuming that Dr. Rand had a property interest in the Medicaid reimbursements, he had not been deprived of property without due process of law. Judge Altimari reached this conclusion after noting that "the fundamental requirement of due process is the opportunity to be heard," and that Dr. Rand had not availed himself of the constitutionally adequate opportunities to be heard afforded under New York law. Additionally, Judge Altimari found that Dr. Rand's action had to be dismissed against State DSS on Eleventh Amendment grounds. Although no summary judgment motion was pending at the time of his decision, it appears that Judge Altimari treated the pending Rule 12(b) motion as one for summary judgment in light of affidavits submitted to him. On October 18, 1983, Dr. Rand appealed Judge Altimari's decision.
 
 DISCUSSION
 
 19
 The Supreme Court has held that there are two essential prerequisites to any action brought under Section 1983. First, the conduct complained of must have been committed by a person acting under color of state law, and, second, that conduct must have deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In this case, there can be no question that Dr. Rand's Medicaid reimbursement claims were denied by persons acting under color of state law. We turn therefore to the second element and consider whether Dr. Rand was deprived of rights secured by the Constitution or by federal law. We assume for purposes of discussion that Dr. Rand was deprived of property in the constitutional sense but conclude that whatever deprivation occurred was consistent with due process requirements.
 
 
 20
 Dr. Rand claims that he was denied due process because the July 12th letter failed to state that his pending reimbursement claims might be denied as a consequence of the disqualification proceedings. Nassau DSS's letter leveled wholesale charges against Dr. Rand based on an investigation of his past claims and indicated that it would seek "[r]estitution of all Medicaid funds inappropriately received." Dr. Rand asserts, however, that the letter or some other communication also should have noted specifically that his pending claims were involved in the proceedings instituted by Nassau DSS. Because the letter failed to do this, Dr. Rand argues that he was not adequately informed of the extent and nature of his impending deprivation.
 
 
 21
 The sole issue before us is thus whether New York accorded Dr. Rand reasonable notice of its intention not to pay his pending claims absent some action on his part to substantiate them. The adequacy of the notice given can be assessed only in the context of the procedural safeguards afforded by New York law and Dr. Rand's conduct with respect to those procedures. The Constitution does not require the detailed notice of a common law pleading. Rather, the notice given is sufficient so long as it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [an] action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (emphasis added); see Burtnieks v. City of New York, 716 F.2d 982, 986 (2d Cir.1983). The test is objective, namely, whether under all the circumstances the notice given would have alerted a reasonable person in the position of the recipient to the possible consequences at hand. Numerous circumstances are relevant to this assessment, including the recipient's involvement in the ongoing administrative process, his or her obligation to provide evidence and the availability of proceedings at which details as to the matters in issue can be obtained.
 
 
 22
 We hold as a matter of law that Dr. Rand was accorded due process. By the time of the receipt of the July 12 letter, any reasonable person in Dr. Rand's position would have instantly recognized that pending reimbursement claims might be affected by the disqualification proceedings. He knew that at least some of these reimbursement claims were in fact not being paid as the result of an audit. He attended a provider discussion, the subject of which was past claims, at which his counsel was present, but declined either to produce documentation requested of him or to answer certain questions. The July 12th letter specified eight categories of violations, amounting to fraud, obviously based upon an investigation of past claims. It indicated that Nassau DSS would seek reimbursement of some claims which had been paid. Instead of defending his pending claims, however, he caused the hearing offered by the July 12th letter to abort precisely because past claims were involved. This hearing was not an abstract inquiry into the general routine of Dr. Rand's billing practices but from his viewpoint an all too concrete look into particular cases. Confronted with the possibility of a criminal prosecution, the prospect of testifying in an administrative inquiry about some of the claims which he now wraps in the Constitution must have seemed to Dr. Rand at the time too much process rather than too little. So too, he allowed his pending Article 78 proceeding to wither and die on the vine.
 
 
 23
 Knowing that his pending claims were in fact not being paid because of a wholesale challenge to his billing practices and faced with an abundance of procedural opportunities to clear himself or to clarify doubts he may have had as to what was at stake, Dr. Rand chose essentially to sit tight and avoid formal scrutiny of any of the claims he had submitted.[2] Dr. Rand's failure to take advantage of the hearing opportunities afforded him does not in any way bear upon our determination of the objective adequacy of the notice he received. We conclude that the notification from Nassau DSS reasonably informed Dr. Rand that his pending claims were in jeopardy, and that he was given sufficient opportunity to respond to the alleged violations.
 
 
 24
 Because we resolve the due process issues in defendants' favor, we do not consider the Eleventh Amendment defense advanced by the State DSS.
 
 
 25
 Affirmed.
 
 
 
 [1]
 In August, 1979 18 N.Y.C.R.R. Sec. 515 was substantially revised. Reference here is made to the regulations in effect in 1978
 
 
 [2]
 Nassau DSS's response to Dr. Rand's inquiry of December 5, 1979 adds little to his due process argument since he makes no claim that the letter caused him to abandon remedies then available