Willie D. WHITE, Plaintiff–Appellee,

v.

Richard FRANK, Freeman Marshall,
Defendants–Appellants,

City of Poughkeepsie, Defendant.

Nos. 1300, 1301, Dockets
88–7271, 88–7273.

United States Court of Appeals,
Second Circuit.

Argued June 22, 1988.

Decided Aug. 24, 1988.

Edward L. Owen, III, New York City
(Milton Thurm, Thurm & Heller, Peter I.
Sheft, Robert P. Siegel, Sheft, Wright &
Sweeney, New York City, on the brief), for
defendants-appellants.

Gerald D. Reilly, White Plains, N.Y.
(Reilly & Lewis, White Plains, N.Y., on the
brief), for plaintiff-appellee.

Before NEWMAN, KEARSE and
CARDAMONE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This case requires consideration of the
circumstances under which a police officer
who intentionally gives false testimony be-
fore a grand jury is entitled to absolute
immunity from civil liability under 42
U.S.C. § 1983 (1982). The issue is raised
on an interlocutory appeal by defendants-
appellants Richard Frank and Freeman
Marshall from an order of the District
Court for the Southern District of New
York (David N. Edelstein, Judge) denying
their motion to dismiss a civil rights suit
brought by plaintiff-appellee Willie D.
White. 680 F.Supp. 629. The suit seeks
damages for false arrest, false imprison-
ment, and malicious prosecution. White's
claims stem from his arrest and conviction
on narcotics charges resting in substantial

part on the false testimony of at least one of the appellants, who were then police officers in Poughkeepsie, New York. The conviction was vacated when the perjury was discovered. Appellants contend that dismissal of the section 1983 claim is required because they are absolutely immune from any civil liability based on their grand jury testimony. We conclude that the officers are not immune from liability if they can be considered to be complaining witnesses. Because this status determination raises a disputed factual issue, the immunity defense cannot be determined on an interlocutory appeal, and we therefore must dismiss the appeal.

## Background

The complaint contains the following allegations. Until sometime in mid–1985, the appellants Frank and Marshall were police officers in the Crime Prevention Unit of the Poughkeepsie Police Department. Both officers appeared before the Dutchess County grand jury in the summer of 1983 and testified that they had observed White sell small quantities of cocaine to a confidential informant, Frank testifying to a sale on June 8, 1983, and Marshall testifying to a sale on June 15, 1983.

The record at this stage does not reveal whether additional evidence, testimonial or otherwise, was presented to the grand jury concerning the alleged crimes. Nor are we informed of any additional facts detailing the nature and extent of appellants' roles in the initial stages of the prosecution.

The grand jury returned a four-count indictment charging White with the sale and possession of a controlled substance on both occasions in June. An arrest warrant was issued upon the indictment, and White was arrested by unidentified Poughkeepsie police officers. Unable to make bail, White remained in jail pending trial. After a pretrial suppression hearing, at which Frank and Marshall again testified against White, the case proceeded to trial.

At trial, Frank and Marshall once again appeared as witnesses and repeated their testimony concerning the two alleged narcotics transactions. White was convicted on the counts relating to the alleged June 8 episode, concerning which Frank had testified. The jury could not, however, reach a verdict on the counts relating to the June 15 episode, which had been the subject of Marshall's testimony, and these counts were dismissed. White was sentenced to a prison term of seven and one-half to fifteen years.

During the latter part of 1984 and early 1985, the Dutchess County District Attorney's office investigated allegations of official misconduct in the Poughkeepsie Police Department's Crime Prevention Unit. The probe apparently uncovered widespread corruption implicating to some extent both Frank and Marshall. Frank was charged with grand larceny in the third degree, criminal possession of stolen property in the second degree, and tampering with physical evidence, all arising out of his activities as a police officer. He later pled guilty to tampering with physical evidence. Criminal charges were also brought against Marshall as a result of the investigation, and he subsequently pled guilty to the crime of official misconduct.

In early 1985 Frank confessed to the Dutchess County District Attorney's office that his testimony in the proceedings against White had been perjured. As a consequence, White's conviction was vacated pursuant to Article 440 of the New York Criminal Procedure Law, and he was released from custody after serving almost two years in prison.

White then brought suit under section 1983, claiming that his rights protected by the Fourth, Sixth, and Fourteenth Amendments had been violated as a result of the false arrest, false imprisonment, and malicious prosecution allegedly instigated and orchestrated by Frank and Marshall.[1] The

---

1. White also alleged that Frank and Marshall maliciously conspired to initiate the criminal prosecution in violation of 42 U.S.C. § 1985(3) (1982), discriminating against him because he is Black. The District Court denied a motion to dismiss this claim, rejecting the contention that

White had insufficiently alleged racial animus. Appellants challenge this ruling, but we decline to exercise pendent appellate jurisdiction over that challenge. The sufficiency of the pleading of the conspiracy is not closely related to the immunity issue raised by appellants' challenge

defendants moved to dismiss the complaint on the ground that they are absolutely immune from civil liability for damages based on their testimony before the grand jury, at the pretrial suppression hearing, and at trial. They relied then, as they do now, primarily on *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), which held that police officers are immune from section 1983 liability based on their testimony as witnesses at trial. Judge Edelstein agreed that *Briscoe* required dismissal of the claims arising from defendants' testimony at the suppression hearing and at trial. However, the District Judge ruled that the defendants were not immune from liability for damages based on their testimony before the grand jury.

## Discussion

■ Although the denial of a motion to dismiss is ordinarily not an appealable "final decision" within the meaning of 28 U.S.C. § 1291 (1982), the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), has been construed to permit interlocutory appeals from denials of substantial claims of immunity. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (qualified immunity defense); *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (absolute immunity defense); *Musso v. Hourigan*, 836 F.2d 736 (2d Cir.1988) (qualified immunity defense); *Minotti v. Lensink*, 798 F.2d 607 (2d Cir.1986) (Eleventh Amendment immunity defense), *cert. denied*, —— U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987); *San Filippo v. U.S. Trust Co.*, 737 F.2d 246 (2d Cir.1984) (absolute immunity defense). However, interlocutory appeal is not available where the immunity issue turns on disputed questions of fact. *See Goddard v. Urrea*, 847 F.2d 765 (11th Cir.1988); *Group Health Inc. v. Blue Cross Association*, 793 F.2d 491, 497

(2d Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987); *Evans v. Dillahunty*, 711 F.2d 828, 830 (8th Cir.1983). Thus our jurisdiction over this appeal depends on whether the appellants' immunity defense can be decided as a matter of law. That issue, in turn, requires consideration of the nature of immunities concerning testimony in criminal prosecutions.

Section 1983 "on its face admits of no immunities," *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), but the Supreme Court has "concluded that immunities 'well grounded in history and reason' ha[ve] not been abrogated 'by covert inclusion in the general language' of § 1983." *Id.* at 418, 96 S.Ct. at 989 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)). The Court has developed a two-step approach for determining whether an immunity defense is available in a section 1983 suit. The critical initial question is "whether an official claiming immunity under § 1983 can point to a common law counterpart to the privilege he asserts." *Malley v. Briggs*, 475 U.S. 335, 339–40, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986). Second, if the official "was accorded immunity from tort actions at common law when the Civil Rights Act was enacted in 1871, the Court next considers whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 2824, 81 L.Ed.2d 758 (1984). *See, e.g., Briscoe v. LaHue, supra*, 460 U.S. at 336–46, 103 S.Ct. at 1116–21. For reasons that will become clear, only the first of these two steps requires consideration on the pending appeal.

The common law made a subtle but crucial distinction between two categories of witnesses with respect to their immunity for false testimony. Those whose role was

to the ruling denying their motion to dismiss the section 1983 claim, *cf. San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 255 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985); appellants do not contend that the immunity they assert in defense of the section

1983 claim is available in defense of the section 1985(3) conspiracy claim, *see id.* at 254.

Also not before us is White's claim against the City of Poughkeepsie, alleging a failure adequately to train and supervise police officers, including the appellants.

limited to providing testimony enjoyed immunity; those who played a role in initiating a prosecution—complaining witnesses—did not enjoy immunity. The distinction reflected the difference between the two causes of action by which those falsely accused sought to hold witnesses liable. In an action for defamation, the perjurious witness was sought to be held liable only for the defamatory effect of his testimony, and in such an action he enjoyed absolute immunity upon a threshold showing that the allegedly defamatory statements were relevant to the judicial proceeding. *See Briscoe v. LaHue, supra,* 460 U.S. at 330–32 & n. 11, 103 S.Ct. at 1112–13 & n. 11. This immunity applied to grand jury as well as trial testimony. *See Schultz v. Strauss,* 127 Wis. 325, 329, 106 N.W. 1066 (1906); *Kidder v. Parkhurst,* 3 Allen 393, 396 (Mass.1862); *Sands v. Robison,* 12 Smedes & M. 704, 20 Miss. 704 (1849); *King v. Skinner,* 1 Lofft 55, 56, 98 Eng.Rep. 529, 530 (K.B.1772); Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum.L.Rev. 463, 488 n. 78 (1909). However, in an action for malicious prosecution, the complaining witness was sought to be held liable for his role in *initiating* a baseless prosecution, and "complaining witnesses were not absolutely immune at common law," *Malley v. Briggs, supra,* 475 U.S. at 340, 106 S.Ct. at 1096. *See, e.g., Dennis v. Ryan,* 65 N.Y. 385 (1875); *Fitzjohn v. Mackinder,* 9 C.B. (N.S.) 506, 142 Eng.Rep. 199 (1861); *see generally* W. Prosser, *Law of Torts* § 119 (4th ed. 1971).[2]

Indeed, courts and commentators often distinguished between the two actions precisely in terms of the availability of immunity. In *Hastings v. Lusk,* 22 Wend. 410 (N.Y.1839), the court described that class of communications entitled to absolute "privilege," *i.e.,* immunity, in a defamation suit:

> To this class, also, belong complaints made to grand juries and magistrates, charging persons with crimes, for which no action for slander will lie, although express malice as well as the absolute falsity of the charge can be established by proof. *But the law has provided a different remedy in cases of that kind, where, in addition to what has before been stated, it can be proved that the party who made the complaint had no probable cause for believing that the charge was true.*

*Id.* at 417 (emphasis added). In 1860, another New York court offered a similar analysis:

> In the case of judicial proceedings ... words spoken or written by a party, by counsel, by a judge, a juror or a witness, although false, defamatory and malicious, are not actionable if they were uttered in the due course of the proceeding, in the discharge of a duty, or the prosecution or defense of a right, and were pertinent and material to the matter in hand. It is unquestionable that a person who institutes a groundless proceeding, whether civil or criminal,

---

**2.** An action for malicious prosecution has long been available against an individual who (1) instituted criminal proceedings against the plaintiff (2) with malice and (3) without probable cause, if (4) the criminal proceedings terminated in the plaintiff's favor. *See generally* W. Prosser, *supra,* § 119, at 834. The tort evolved during the Sixteenth and Seventeenth Centuries out of the ancient writ of conspiracy into an action on the case maintainable against a single defendant. *See Briscoe v. LaHue, supra,* 460 U.S. at 351 n. 7, 103 S.Ct. at 1123 n. 7 (Marshall, J., dissenting); W. Prosser, *supra,* § 119, at 834; H. Stephen, *The Law Relating to Actions for Malicious Prosecution* 1–4 (1888). The first "modern" action for malicious prosecution in England was *Savile v. Roberts,* 1 Ld.Raym. 374, 91 Eng.Rep. 1147 (K.B.1698), and the action was later routinely available in this country as well. *See Briscoe v. LaHue, supra,* 460 U.S. at 351 n. 9,

103 S.Ct. at 1124 n. 9 (Marshall, J., dissenting) (citing cases). *See also Dinsman v. Wilkes,* 53 U.S. (12 How.) 390, 402, 13 L.Ed. 1036 (1852); *Munns v. De Nemours,* 17 F.Cas. 993, 995 (C.C.D. Pa.1811) (No. 9,926) (Washington, J., charging the jury). The state cases from the Nineteenth Century are too numerous for citation here. A collection of illustrative cases with extensive notation is provided in 2 F. Bohlen, *Cases on the Law of Torts* 999–1036 (1915). The features of the tort were of sufficient distinctiveness and importance to warrant extensive treatment by treatise writers on both sides of the Atlantic. *See, e.g.,* J. Clerk & W. Lindsell, *The Law of Torts,* ch. XIX (7th ed. 1921); M. Newell, *A Treatise on the Law of Malicious Prosecution* (1892); J. Townshend, *A Treatise on the Wrongs Called Slander and Libel,* ch. XVIII (4th ed. 1890); H. Stephen, *supra;* C. Addison, *Wrongs and Their Remedies,* ch. XIII (3d ed. 1870).

against another, upon false or defamatory charges, is liable to an action for the injury he occasions. But that the action must be for the malicious complaint, indictment or action, and not for the words.

*Perkins v. Mitchell,* 31 Barb. 461, 468 (N.Y.Sup.Ct.1860). *See also, e.g., Kidder v. Parkhurst, supra,* 3 Allen at 396 (Mass. 1862) (dismissing libel claim on immunity grounds while considering malicious prosecution claim on the merits); *Torrey v. Field,* 10 Vt. 353, 415 (1838); Veeder, *supra,* 9 Colum.L.Rev. at 471 (discussing alternative remedies available despite absolute immunity from defamation). *See generally* Harper, *Malicious Prosecution, False Imprisonment and Defamation,* 15 Tex.L.Rev. 157 (1937) (comparing actions).[3]

Other early cases illustrate the point with special pertinence to the pending appeal by permitting a plaintiff to recover in an action for malicious prosecution based in part upon the defendant's appearance before the grand jury. *See Dennis v. Ryan,* 65 N.Y. 385 (1865); *Fitzjohn v. Mackinder,* 9 C.B. (N.S.) 506, 142 Eng.Rep. 199 (1861). In *Fitzjohn,* the Court of Exchequer Chamber ruled that an action for malicious prosecution would lie against a defendant who was bound over to prosecute the plaintiff and who prosecuted by repeating false testimony before the grand and petit juries. The issue was whether one bound over to prosecute by a judicial authority nonetheless may be held liable for having caused the prosecution. A majority of the justices answered affirmatively, and the fact that the defendant falsely and maliciously preferred the indictment before a grand jury was critical to that holding "on the ground that the defendant was not bound by his recognizances to give false evidence, or indeed to continue the prosecution after preferring the bill before the grand jury." H. Stephen, *supra,* at 17. In the words of Lord Chief Justice Cockburn: "And, as a true bill could not have been found, or a case to go to the jury have been made out, without a repetition of the defendant's former [false] evidence, it must be taken that the defendant, both before the grand jury and on the trial, again produced the forged document and renewed the perjury of which he had before been guilty. Upon these facts, I am of the opinion that the defendant is liable in this action." 9 C.B. (N.S.) at 527, 142 Eng.Rep. at 207.[4]

---

**3.** Professor Harper's article traces the complex and subtle way in which the actions for malicious prosecution, false imprisonment, and defamation complement one another in the context of defining the "tort remedies available against one who directly or indirectly participates or attempts to participate in the administration and enforcement of the criminal law." Harper, *supra,* 15 Tex.L.Rev. at 183. He identifies a roughly inverse relationship between the standards for liability and the limitations on liability within each doctrinal framework and seeks to explain this phenomenon by reference to the different policy concerns at work in the three fields of liability. Thus, the defamation action provides for strict liability, but the privilege from liability for words spoken in a judicial proceeding is absolute because "the public interest in protecting those who materially assist in the administration of the criminal law so far offsets the interest in reputation alone." *Id.* at 168. However, the action for malicious prosecution is not similarly circumscribed. It provides redress, though only under tightly guarded circumstances, from unjustifiable litigation in order to protect the plaintiff's financial interests and interest in bodily freedom, as well as his reputation. *Id.* at 168–70. The malicious prosecution plaintiff faced a daunting task to establish liability, but the obstacle of witness immunity was removed.

**4.** There were isolated cases at common law in which a witness was held to be immune from liability for malicious prosecution for testimony before a grand jury. *See Taplin–Rice–Clerkin Co. v. Hower,* 124 Ohio St. 123, 177 N.E. 203 (1931); *McClarty v. Bickel,* 155 Ky. 254, 159 S.W. 783 (1913). However, these cases are best understood as insulating from civil liability one who merely appears as a witness against the accused, whether or not his testimony is false and malicious, in the absence of some evidence that the witness is responsible for having *caused* the prosecution. *See McClarty v. Bickel, supra,* 155 Ky. at 256, 159 S.W. at 784 ("There is no analogy where a man by false and malicious statements to the arresting officer caused a party to be apprehended and confined in prison and that of a case where one is caused to testify in court under oath against a party already arrested and on trial.") (emphasis omitted); *see also* W. Prosser, *supra,* § 119, at 837 n. 28 ("Evidence that the defendant testified as a witness is, however, admissible with other acts and circumstances to show instigation or active encouragement of the prosecution or an improper motive.").

This common law background has special relevance to the issue of immunity for public officials sought to be held liable under section 1983 for initiating baseless charges.[5] The Supreme Court, recognizing that the common law did not extend immunity to "complaining witnesses," *Malley v. Briggs, supra,* 475 U.S. at 340–41, 106 S.Ct. at 1096, has denied immunity to police officers sued under section 1983 for wrongfully initiating the criminal process by applying for arrest warrants. The absence of immunity for such action stands in marked contrast to the availability of immunity where liability is asserted solely because of an officer's role in testifying at a judicial proceeding. Thus, immunity has been recognized against a section 1983 suit based on an officer's trial testimony, *Briscoe v. LaHue, supra.* We have recently afforded immunity against a claim based on testimony at a pretrial suppression hearing, *Daloia v. Rose,* 849 F.2d 74 (2d Cir.1988), and had previously indicated in dictum that immunity would be available to a grand jury witness. *See San Filippo v. U.S. Trust Co., supra,* 737 F.2d at 254; *cf. Dale v. Bartels,* 732 F.2d 278, 282 n. 5 (2d Cir.1984) (noting that question remains open after *Briscoe* ).

█ Numerous decisions have similarly afforded immunity to officials charged under section 1983 with testifying falsely at various types of pretrial proceedings, although the decisions have not been careful to recognize that such immunity is available only where the constitutional tort is simply giving false testimony. *See Williams v. Hepting,* 844 F.2d 138 (3d Cir. 1988) (adversarial pretrial proceedings); *Holt v. Castaneda,* 832 F.2d 123 (9th Cir. 1987) (same), *cert. denied,* —— U.S. ——, 108 S.Ct. 1275, 99 L.Ed.2d 486 (1988); *Macko v. Byron,* 760 F.2d 95 (6th Cir.1985) (per curiam) (grand jury); *Kincaid v. Eberle,* 712 F.2d 1023 (7th Cir.) (per curiam) (same), *cert. denied,* 464 U.S. 1018,

104 S.Ct. 551, 78 L.Ed.2d 725 (1983); *Briggs v. Goodwin,* 712 F.2d 1444 (D.C.Cir. 1983) (grand jury motion hearing), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984); *see also Strength v. Hubert,* 660 F.Supp. 878, 885–87 (M.D. Ala.), *modified in part,* 670 F.Supp. 322 (1987) (grand jury); *Dale v. Bartels,* 552 F.Supp. 1253 (S.D.N.Y.1982) (grand jury, pre-*Briscoe* ), *aff'd in part, rev'd in part on other grounds,* 732 F.2d 278 (2d Cir. 1984). *But see Anthony v. Baker,* 767 F.2d 657, 663 (10th Cir.1985) (*Briscoe* inapplicable to grand jury proceeding); *Wheeler v. Cosden Oil & Chemical Co.,* 734 F.2d 254, 261 & n. 16 (5th Cir.) (*Briscoe* inapplicable to probable cause hearing), *modified on other grounds,* 744 F.2d 1131 (1984). Where, however, the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a "complaining witness" renders him liable to the victim under section 1983, just as it did at common law, and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution.

█ Appellants also contend that the role of both the public prosecutor and the grand jury in advancing the prosecution of White necessarily insulated them from liability for malicious prosecution. We disagree. The intervening acts of a grand jury have never been enough to defeat an otherwise viable malicious prosecution claim, whether or not the grand jury votes a true bill or even returns an indictment ultimately determined to be deficient as a matter of law. *See* H. Stephen, *supra,* at 10–13 (discussing English cases). And though an indictment by a grand jury is generally considered *prima facie* evidence of probable cause in a subsequent civil action for malicious prosecution, this presumption may be rebutted by proof that

---

5. There can be no question that malicious prosecution can form the basis for imposition of liability under section 1983. *See Raysor v. Port Authority,* 768 F.2d 34, 39 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986); *Russo v. New York,* 672 F.2d 1014,

1018 (2d Cir.1982), *modified on other grounds,* 721 F.2d 410 (1983); *Singleton v. City of New York,* 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *see also Angel v. Kasson,* 581 F.Supp. 170, 175 & n. 9 (N.D.N.Y.1983).

the defendant misrepresented, withheld, or falsified evidence. *See Hopkinson v. Lehigh Valley R.R. Co.*, 249 N.Y. 296, 300, 164 N.E. 104, 106 (1928); *Dennis v. Ryan, supra*, 65 N.Y. at 388–89; W. Prosser, *supra*, § 119, at 846; *Restatement (Second) of Torts* § 664(2) & comment b (1977).

The public prosecutor's role in the prosecution likewise does not affect our immunity analysis, though again it may affect appellants' ultimate liability on the merits. No doubt, the availability of the malicious prosecution action has been curtailed with the growth of the office of the public prosecutor. Unlike the private prosecutor, *see* Note, *Private Prosecution: A Remedy for District Attorneys' Unwarranted Inaction*, 65 Yale L.J. 209, 232–33 & n. 127 (1955), the public prosecutor "is absolutely immune from suit for malicious prosecution," *Imbler v. Pachtman, supra*, 424 U.S. at 437, 96 S.Ct. at 998. *See Yaselli v. Goff*, 12 F.2d 396 (2d Cir.1926), *aff'd*, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927) (per curiam). The exercise of independent judgment by the public prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have "caused" or "procured" the prosecution, thus defeating grounds for liability under this initial prong of the common law standard. *See* W. Prosser, *supra*, § 119, at 837 ("If the defendant merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer ... the [defendant] is not regarded as having instigated the proceeding...." (footnote omitted)); *Restatement (Second) of Torts, supra*, § 653 comment g.

As with the grand jury, however, the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false. *See Hopkinson v. Lehigh Valley R.R. Co., supra*, 249 N.Y. at 300–01, 164 N.E. at 106; *Dennis v. Ryan, supra*, 65 N.Y. at 388–89; *see also Russo v. New York, supra*, 672 F.2d at 1018 (presumption of probable cause arising from arrest warrant disappears where warrant is issued on the basis of sworn accusations of defendant in malicious prosecution action); W. Prosser, *supra*, § 119, at 837; *Restatement (Second) of Torts, supra*, § 653 comment g. "It is quite clear," wrote two English commentators in the early part of this century, "that a defendant who has misled a tribunal by dishonest evidence and thereby caused it to act to the prejudice of the plaintiff is liable, even though he may not have purported to be the prosecutor," J. Clerk & W. Lindsell, *supra*, at 639 (citations omitted).[6]

■ Though the appellants are not entitled to immunity simply because they participated as witnesses before the grand jury that indicted White, they may yet be entitled to immunity if further exploration of the facts demonstrates that they did not play a sufficient role in initiating the prosecution to be liable for the constitutional tort of malicious prosecution. Clearly, the plaintiff has alleged a claim of malicious prosecution and appears to have a factual basis that will defeat a claim of immunity from liability for this tort. Whether that turns out to be the case cannot be determined at this stage. Since the availability of immunity cannot now be determined as a matter of law, we lack jurisdiction over this interlocutory appeal and are obliged to dismiss so that the matter may proceed in the trial court.

The appeal is therefore dismissed.

---

**6.** No argument is made that appellants' status as police officers confers additional force to their claim to absolute immunity in their role as witnesses. Indeed, appellants urge us to treat police officer-witnesses no differently from any other witness. *Cf. Briscoe v. LaHue, supra*, 460 U.S. at 335–36, 103 S.Ct. at 1116 ("When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness...."). We have assumed in the past that police officers are subject to liability for malicious prosecution as any other defendant would be, assuming of course that the high standard of liability is met. *See, e.g., Russo v. New York, supra; Singleton v. City of New York, supra*.