Derry SYKES, Plaintiff–Appellant,

v.

John JAMES, New York State Parole Officer, Defendant–Appellee.

No. 187, Docket 92–7949.

United States Court of Appeals, Second Circuit.

Argued Sept. 8, 1993.

Decided Dec. 30, 1993.

**516**

Lisa H. Thurau, New York City (Douglas F. Broder, Coudert Brothers, of counsel), for plaintiff-appellant.

Marion R. Buchbinder, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., of counsel), for defendant-appellee.

Before: NEWMAN, Chief Judge, MINER and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Derry Sykes appeals from a judgment entered in the United States District Court for the Eastern District of New York (Platt, *C.J.*), dismissing his complaint for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). The complaint presents a claim for deprivation of constitutional rights under the provisions of 42 U.S.C. § 1983. In the complaint, Sykes alleges that his parole officer, defendant-appellee John James, violated his "basic statutory due process rights accorded under the by laws of [New York] Executive Law–259" by submitting a perjured affidavit in opposition to his petition for a writ of habeas corpus in the New York Supreme Court. The complaint also includes allegations that James conspired with Irmatine Marshall, Sykes' former common law wife, to obstruct justice by submitting false testimony at Sykes' final parole revocation

hearing. On appeal, Sykes principally contends that the district court erred in determining that James was entitled to absolute immunity.[1] We affirm the dismissal of the complaint on the ground that James is entitled to absolute immunity from civil liability for allegedly perjurious statements that he made in an affidavit submitted in opposition to Sykes' petition for state habeas relief and on the ground that no claim of conspiracy is stated.

## BACKGROUND

In April of 1978, Sykes was convicted of second degree robbery in the New York Supreme Court, Kings County, and sentenced to a prison term of seven years. Sykes later was paroled, and James was assigned as Sykes' parole officer. On September 29, 1988, Sykes was arrested for disorderly conduct while attempting to take possession of his belongings at Marshall's apartment. Sykes failed to notify James of the arrest, and a parole violation warrant was issued by the New York State Division of Parole. When Sykes arrived for a scheduled parole meeting on October 31, 1988, he was arrested by James and later transported to the Rikers Island correctional facility for confinement.

At the time of his arrest, Sykes signed a New York State Division of Parole Notice of Violation form acknowledging that he had received notice of the alleged parole violations. According to the Notice, a preliminary parole revocation hearing was scheduled for November 7, 1988 and a final parole revocation hearing was set for December 14, 1988. Although the Notice provided two boxes for the parolee to check—one waiving the preliminary hearing and the other requesting a preliminary hearing—Sykes checked neither box.

No preliminary hearing took place on November 7, and, on November 21, 1988 Sykes filed a *pro se* petition for a writ of habeas corpus in the New York Supreme Court, Bronx County, challenging the lawfulness of the parole revocation proceedings. On November 23, 1988, Sykes was assigned counsel, and the habeas proceeding was adjourned until December 16, 1988 to allow for submission of an amended petition.

On December 14, 1988, the final parole revocation hearing proceeded as scheduled and apparently without objection before an administrative law judge ("ALJ"). The ALJ found, based on the testimony of James, that Sykes had failed to notify James of the September 29, 1988 arrest. The ALJ further found that Sykes entered Marshall's apartment on September 29, 1988 without her permission and destroyed certain electronic equipment there, and that he also harassed and threatened Marshall at her place of employment. The latter findings were based on the "credible testimony" of Marshall and on Sykes' own testimony. The Board of Parole adopted the ALJ's findings, revoked Sykes' parole and ordered that he be incarcerated for eighteen months.

On or about December 16, 1988, Sykes' attorney filed an amended petition for a writ of habeas corpus, in which it was alleged that Sykes was denied his right to a timely preliminary hearing. An affidavit signed by James was submitted by the New York Attorney General's office during the first week in January of 1989 as part of its papers in opposition to the amended petition. In the affidavit, James stated:

> On 10/31/88, Mr. Derry Sykes came into the Brooklyn Office ... at which time Mr. Derry Sykes was taken into custody. I then asked Mr. Sykes if he wanted a Preliminary Hearing. Mr. Sykes stated that he did not want a Preliminary Hearing, but wanted to go straight to the Final Hearing. Mr. Derry Sykes then signed the 9011 form, but neglected to check the appropriate box on the form.

Sykes denies waiving his right to a preliminary hearing.

In a decision dated January 13, 1989 and entered on January 17, 1989, the Supreme Court, Bronx County (Byrne, *J.*) granted the writ of habeas corpus. This decision includ-

---

1. Although the district court did not explain the basis of its decision to grant James' motion to dismiss, the parties have assumed that dismissal was predicated on the doctrine of absolute immunity.

ed the following findings: "No preliminary hearing was afforded this relator. The record is clear that one was scheduled but never occurred. No record of relator waiving his mandated preliminary parole revocation hearing." The court directed the parties to "submit [an] order" reflecting the court's decision. For some unknown reason, the order sustaining the petition, vacating the parole violation warrant, releasing Sykes from custody and restoring him to parole supervision was not filed until November 13, 1989.

Since no relief was forthcoming, Sykes, having been transferred to the Great Meadow Correctional Facility in Comstock, New York, filed a *pro se* petition for a writ of habeas corpus in the Supreme Court, Washington County, in February of 1989. It appears that in February of 1990 the court in Washington County dismissed the petition as moot, noting that the proceeding in Supreme Court, Bronx County, never was officially transferred and that Sykes had been released from custody. A third habeas corpus petition, filed with the Supreme Court, Appellate Division, Third Department, in the fall of 1989 was dismissed. That dismissal order, entered on December 4, 1989, recited that the application was moot in view of the order of the Supreme Court, Bronx County, releasing Sykes from custody.

On February 28, 1989, Sykes filed a complaint in the United States District Court for the Eastern District of New York in an action for damages brought under 42 U.S.C. § 1983 for various constitutional violations against New York Attorney General Robert Abrams, Justice Burton Hecht of the New York Supreme Court, Richard Pasternack, a Supervising Parole Officer, Assistant New York Attorney General Joseph Wagner, James and Marshall. In a March 13, 1989 order, the district court dismissed *sua sponte* the complaint as to Attorney General Abrams because it failed to allege any facts implicating him in the parole proceedings and, as to Justice Hecht, because the claim against him was frivolous and malicious.

The district court, in a Memorandum and Order dated February 24, 1990, dismissed on collateral estoppel grounds claims against Pasternack and James for false accusations of parole violations. A claim against Wagner for submitting a frivolous affirmation in response to Sykes' habeas petition was dismissed on the ground that, as a government attorney defending litigation against the Government, Wagner was entitled to absolute immunity from civil liability. Claims against Marshall for libel and slander were dismissed on the ground that, as a witness in a judicial proceeding, Marshall was entitled to absolute immunity from civil liability. Finally, the district court dismissed, without prejudice, a claim against James for falsely alleging that Sykes waived his right to a preliminary parole revocation hearing. The district court found that this claim essentially challenged the validity of Sykes' incarceration, which he then was challenging in state court. The district court concluded that comity required dismissal until Sykes exhausted his state remedies.

On June 11, 1991, Sykes, acting *pro se,* filed the complaint in this action, naming James as the sole defendant. According to this complaint, the affidavit submitted by James in the habeas proceeding in the Supreme Court, Bronx County, included the false statement that Sykes had waived his right to a preliminary parole revocation hearing. Sykes also alleged in the complaint that the James affidavit included the false accusation that Sykes had failed to inform James of his September 29, 1988 arrest and that James sought to obstruct justice by conspiring with Marshall to present false testimony at the final parole revocation hearing.

James moved to dismiss the complaint on March 16, 1992, contending that, under *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), he was a government witness in a judicial proceeding and was therefore entitled to absolute immunity from civil liability on the claim of filing a false affidavit. The district court subsequently dismissed the complaint, without opinion. Sykes appealed and this Court thereafter assigned counsel to represent him on appeal.

## DISCUSSION

The grant of a motion to dismiss pursuant to rule 12(b)(6) of the Federal

Rules of Civil Procedure is a ruling of law which we review de novo. *Austern v. Chicago Bd. Options Exchange, Inc.,* 898 F.2d 882, 885 (2d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990). In deciding such a motion, a district court must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff, and may dismiss the complaint only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). This caution applies with greater force where the complaint is submitted *pro se* or the plaintiff alleges civil rights violations. *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

■ Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Rand v. Perales,* 737 F.2d 257, 260 (2d Cir.1984). A plaintiff may allege facts tending to establish the deprivation of federal constitutional rights under color of state law and still fail to state a claim because the defendant has absolute immunity from liability. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecutors have absolute immunity for their actions in initiating prosecutions). Such is the case here.

■ Sykes alleges in his complaint that his due process rights were violated by the submission of a false affidavit which "declar[ed] that ... plaintiff orally waived his constitutional right to a preliminary hearing." The gravamen of this claim is not that Sykes was illegally incarcerated; rather, it is that the submission of the affidavit by James frustrated or delayed the habeas relief sought by Sykes, resulting in his incarceration for thirteen months. This claim of deprivation of constitutional rights is barred because James, as a witness in the state habeas proceeding, is absolutely immune from liability for the evidence he furnished in the habeas proceeding. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In *Briscoe,* the Supreme Court answered in the negative the question "whether 42 U.S.C. § 1983 [42 U.S.C.S. § 1983] authorizes a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial." *Id.* at 326, 103 S.Ct. at 1110. In concluding that such officers were clothed with absolute immunity from liability for damages arising out of false testimony, the Court, referring to *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) and *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (absolute immunity of judges) as well as *Imbler v. Pachtman, supra,* emphasized the importance of protecting the judicial process. 460 U.S. at 335, 103 S.Ct. at 1115. The Court noted the concerns, expressed in common law cases, that a witness who was apprehensive about liability for damages might be reluctant to testify at all, or if the witness did testify, might give distorted testimony arising out of fear of liability. *Id.* at 333, 103 S.Ct. at 1114. It is in these concerns that absolute immunity for official testimony in section 1983 cases is rooted.

■ Functional categories, rather than the status of the defendant, control immunity analysis, *id.* at 342, 103 S.Ct. at 1119, and we have concluded that the "[f]unctions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process." *Dorman v. Higgins,* 821 F.2d 133, 136 (2d Cir.1987) (United

States Probation Officer entitled to absolute immunity in connection with preparation of presentence reports). We have observed that various safeguards are in place to minimize the risks that attend the improper performance of judicial process functions: "the apolitical nature of judicial decisions, the role of precedent ..., the adversary nature of the process, ... and the regularized availability of review." *Id.* at 136–37. The functions of a police officer witness in a judicial proceeding are the same as those of any other witness, *Briscoe v. LaHue,* 460 U.S. at 342, 103 S.Ct. at 1118, and the same safeguards for minimization of risks surround the testimony of official witnesses as surround the testimony of all witnesses. Moreover, considerations of public policy support absolute immunity for official witnesses in section 1983 cases: subjecting such witnesses to damage actions would invite frequent litigation, with concomitant distraction from official duties. *Id.* at 343, 103 S.Ct. at 1119.

Relying in large part on *White v. Frank,* 855 F.2d 956 (2d Cir.1988), Sykes contends that James was not a witness entitled to absolute immunity because he was a *complaining* witness. In *White,* the plaintiff sought damages in a civil rights suit for false arrest, false imprisonment and malicious prosecution arising out of perjured testimony allegedly given by police officers before a grand jury. The case was before us on an appeal from an interlocutory order denying a motion to dismiss the section 1983 claims pleaded in the action on the ground of absolute immunity. We dismissed the appeal, concluding that the officers could not be immune from liability if they were complaining witnesses and that, "[b]ecause this status determination raises a disputed factual issue, the immunity defense cannot be determined on an interlocutory appeal." *Id.* at 957. Although we previously had recognized immunity from liability for testimony given at a pretrial suppression hearing, *Daloia v. Rose,* 849 F.2d 74, 75–76 (2d Cir.1988) (per curiam), and had indicated that immunity would be available to a grand jury witness, *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 254 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985), we distinguished in *White* the role of a complaining witness:

> Where, however, the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a "complaining witness" renders him liable to the victim under section 1983, just as it did at common law, and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution.

855 F.2d at 961.

Sykes argues that the role of a parole officer in the revocation of parole is "remarkably similar" to that of a police officer as a complaining witness. However that may be, the sworn statement furnished by James in the habeas proceeding did not serve to institute that proceeding. While James may very well have functioned as the equivalent of a complaining witness in the parole revocation proceeding, what is the basis of the claim before us today is the affidavit sworn to by James on December 19, 1988 in opposition to the amended application for relief in the habeas proceeding instituted by Sykes. It will be remembered that the affidavit was submitted only for the purpose of notifying the habeas court that Sykes orally had waived a preliminary parole revocation hearing. Although Sykes denied that he waived the hearing, the state court made no finding one way or the other on the oral waiver issue, apparently preferring to rest its decision on a failure to comply with the New York regulatory provision requiring waiver of a preliminary parole revocation hearing to be in writing or made orally on the record at the hearing. *See* N.Y.Comp.Codes R. & Regs. tit. 9, § 8005.6(b) (1991).

█ It cannot be denied that the state habeas proceeding was a judicial proceeding that very much implicated the judicial process. According to New York law, a habeas proceeding is begun by the filing of a petition addressed to the Supreme Court or County Court by one who illegally is imprisoned or otherwise restrained or by one acting in his or her behalf. N.Y.Civ.Prac.L. & R. § 7002 (McKinney 1980 & Supp.1994). After a writ

of habeas corpus is issued on the petition, *id.* § 7003, a return "consist[ing] of an affidavit to be served in the same manner as an answer in a special proceeding," *id.* § 7008(a), may be filed in response to the petition. The affidavit must, among other things, fully explain the authority and cause for the detention. *Id.* § 7008(b). The New York statute specifically directs the court to "proceed in a summary manner to hear the evidence produced in support of and against detention and to dispose of the proceeding as justice requires." *Id.* § 7009(c). An evidentiary hearing is not always necessary, since New York allows for the disposition of habeas corpus proceedings on the papers before the court if no triable issues of fact are raised. *People ex rel. Robertson v. New York State Div. of Parole,* 67 N.Y.2d 197, 201–02, 501 N.Y.S.2d 634, 636–37, 492 N.E.2d 762, 764–65 (1986).

Sykes also argues that even if James was not a complaining witness and therefore had absolute immunity from a claim of testifying falsely, he is not absolutely immune from a claim that he submitted a false affidavit. A habeas corpus proceeding brought under the pertinent New York statute is surrounded by all the judicial process safeguards. That an affidavit may take the place of testimony does not weaken the safeguards. Although cross-examination is not available where, as here, an affidavit is used in place of testimony by a public official, all the other protections of the judicial process were afforded to Sykes: the proceeding was adversarial in nature; it was conducted by a judicial officer who rendered the final decision; and it was subject to judicial review. Moreover, the affidavit oath subjected James to the penalty of perjury if the affidavit were false; Sykes had the opportunity to present affidavits of his own; and testimony could have been taken if the judge considered it necessary.

This case is therefore distinguishable from *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1985), in which a police officer applied to a magistrate for an arrest warrant based on a false affidavit submitted at an *ex parte* hearing. In that case, the accused had none of the procedural safeguards available to the petitioner in this case.

Under the circumstances, it is not a basis for denying absolute immunity to an official witness that the witness testified by affidavit and was not subject to cross-examination. *See Burns v. County of King,* 883 F.2d 819 (9th Cir.1989) (state social worker who submitted affidavit in bail revocation hearing entitled to absolute witness immunity in action based on claim that affidavit was false). Accordingly, James must be afforded absolute immunity from any claim that the affidavit he submitted in the habeas corpus proceeding brought by Sykes was perjured.

The complaint also fails to state a valid claim for conspiracy against James. The conclusory allegations of conspiracy pleaded here are insufficient to survive a motion to dismiss under Rule 12(b)(6). *See San Filippo v. U.S. Trust Co.,* 737 F.2d at 256. Moreover, to the extent that the conspiracy claim rests on the contention that false testimony was presented at Sykes' final parole revocation hearing, Sykes is collaterally estopped from pursuing that claim by reason of the unchallenged finding of Chief Judge Platt in the previous section 1983 action that the findings of the hearing officer in the revocation proceeding were binding on the district court. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). We have considered the other arguments advanced by Sykes and find them to be without merit.

## CONCLUSION

For the foregoing reasons, we conclude that James is entitled to absolute immunity from section 1983 liability for perjurious statements allegedly made in opposition to Sykes' petition for state habeas relief; we conclude further that no claim for conspiracy is stated. The judgment of the district court is affirmed.